444 N.W.2d 676 (1989)
233 Neb. 248
ALLSTATE INSURANCE COMPANY, Plaintiff,
v.
FARMERS MUTUAL INSURANCE COMPANY OF NEBRASKA, Defendant.
No. 88-1004.
Supreme Court of Nebraska.
August 25, 1989.
*677 Waldine H. Olson, of Schmid, Mooney & Frederick, P.C., Omaha, for plaintiff.
Eugene P. Welch and Susan E. Fieber, of Gross, Welch, Vinardi, Kauffman & Day, P.C., Omaha, for defendant.
HASTINGS, C.J., and BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.
BOSLAUGH, Justice.
The U.S. Court of Appeals for the Eighth Circuit has certified two questions of law to this court concerning the coverage under an automobile liability insurance policy issued by the Farmers Mutual Insurance Company of Nebraska. The policy was issued to L.A. Bethune to insure a 1977 Oldsmobile and provided bodily injury liability insurance of $100,000 for each person and $300,000 for each occurrence.
On March 9, 1985, Sylvia T. Miller was driving Bethune's 1977 Oldsmobile in New Mexico with his permission. The automobile was involved in an accident in which both Bethune and Miller received injuries from which they ultimately died. Bethune's estate made a claim for damages against Miller's estate, alleging that Miller's negligence was the proximate cause of the accident.
Prior to the accident, Allstate Insurance Company had issued an automobile liability policy to Miller, which provided bodily injury liability insurance of $50,000 for each person and $100,000 for each occurrence.
In settlement of the Bethune claim, and without prejudice to any claims the companies might have against each other, Allstate and Farmers each paid $12,500 to Bethune's estate. Allstate then brought a declaratory judgment action in the U.S. District Court against Farmers to determine whether the household exclusion clause in the Farmers policy was valid and excluded coverage to Miller for liability to Farmers' insured, Bethune.
The exclusion clause with which we are concerned is sometimes called the "household exclusion clause" because it commonly excludes coverage for liability for injuries to members of the family of the insured residing in the same household of the insured. In this case, however, we are concerned only with that part of the clause which excludes coverage for liability for bodily injuries to the named insured.
Allstate contended that its named insured, Miller, was driving Bethune's car as a permissive driver; that she was an omnibus insured under the Farmers policy; that the Farmers policy provided primary coverage for the accident; and that the Allstate policy provided excess coverage. Farmers concedes that Miller was a permissive driver and as such would have been an omnibus insured under the Farmers policy, but contends that the household exclusion in Bethune's policy issued by Farmers excluded coverage to Miller for injuries sustained by Bethune.
The case was submitted to the district court upon an agreed statement of facts. The district court found that under the Farmers policy Miller was an omnibus insured and that the policy contained exclusions from coverage, some of which referred to "the named insured" and others *678 to "the insured." The court noted that the household exclusion referred to "the insured" and that Farmers had agreed "to pay on behalf of the insured all sums which the insured became legally obligated to pay as damages because of ... bodily injury sustained by other persons." The court found the express language of the Farmers exclusion meant that the policy "does not apply under Coverage A to bodily injury to [Ms. Miller] or to any member of the family of [Ms. Miller] residing in the same household as [Ms. Miller]." The district court further found that the claim against Miller's estate was made by Bethune's estate and that "Mr. Bethune is not Ms. Miller and is not a member of Ms. Miller's family residing in her household." The district court concluded that Miller was not excluded from coverage under the exclusion, and Farmers was ordered to pay Allstate $12,500 for Allstate's contribution to the settlement of Bethune's claim.
Farmers appealed to the U.S. Court of Appeals. Finding no controlling Nebraska precedent, the court of appeals certified the following two questions to this court:
(1) Under Nebraska law, does the Farmers Mutual household exclusion by its terms exclude liability coverage for bodily injury to the named insured when those injuries are caused by the negligence of a permissive operator?
(2) If coverage is excluded by the policy terms, may the exclusion be enforced under Nebraska law?
There is no issue of fact because the parties submitted the case to the district court upon an agreed statement of facts.
The policy issued by Farmers to Bethune contained the following language:
Coverages A and B(A) Bodily Injury Liability and (B) Property Damage Liability.
(1) To pay on behalf of any insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons ... arising out of the ownership, maintenance or use, including loading or unloading of the owned automobile...
....
EXCLUSIONSINSURING AGREEMENTS I AND II
This insurance does not apply under:
....
(i) coverage A, to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured ...
DEFINITIONSINSURING AGREEMENTS I AND II
InsuredUnder coverages A, B and C the unqualified word "insured" includes
(1) the named insured, and
....
(4) any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured or such spouse and are within the scope of such permission....
The answer to the first question is found by applying the language of the policy issued by the defendant to the facts of the case in accordance with the following rules.
An insurance policy should be considered as any other contract and be given effect according to the ordinary sense of the terms used, and if they are clear they will be applied according to their plain and ordinary meaning. Pettid v. Edwards, 195 Neb. 713, 240 N.W.2d 344 (1976). Where the terms of an insurance contract are clear, they are to be accorded their plain and ordinary meaning. Polenz v. Farm Bureau Ins. Co., 227 Neb. 703, 419 N.W.2d 677 (1988); Waylett v. United Servs. Auto. Assn., 224 Neb. 741, 401 N.W.2d 160 (1987); Roth v. Farmers Mut. Ins. Co., 220 Neb. 612, 371 N.W.2d 289 (1985); Lumbard v. Western Fire Ins. Co., 221 Neb. 804, 381 N.W.2d 117 (1986); State Farm Mut. Auto. Ins. Co. v. Royal Ins. Co., 222 Neb. 13, 382 N.W.2d 2 (1986); Hemenway v. MFA Life Ins. Co., 211 Neb. 193, 318 N.W.2d 70 (1982); Rodriguez v. Government Employees Ins. Co., 210 Neb. *679 195, 313 N.W.2d 642 (1981). An ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract. Lumbard v. Western Fire Ins. Co., supra; Rodriguez v. Government Employees Ins. Co., supra. The parties to an insurance contract may contract for any lawful coverage, and the insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute. Waylett v. United Servs. Auto. Assn., supra; Kracl v. Aetna Cas. & Surety Co., 220 Neb. 869, 374 N.W.2d 40 (1985); Pettid v. Edwards, supra; Safeco Ins. Co. of America v. Husker Aviation, Inc., 211 Neb. 21, 317 N.W.2d 745 (1982); Swedberg v. Battle Creek Mut. Ins. Co., 218 Neb. 447, 356 N.W.2d 456 (1984); Steinheider & Sons, Inc. v. Iowa Kemper Ins. Co., 204 Neb. 156, 281 N.W.2d 539 (1979).
Contrary to the contention of the plaintiff, Allstate, we find the language of the policy issued by the defendant to be clear. As such, it should be given its plain and ordinary meaning.
The exclusion provides that the unqualified word "insured" includes the named insured, who is Bethune. Thus, although Miller was otherwise an "insured" under the policy, the exclusion specifically excludes coverage for the liability of Miller to Bethune for bodily injury. The finding of the U.S. District Court to the contrary was erroneous. The answer to the first question is yes.
The answer to the second question depends upon whether there is any statute or public policy in Nebraska that prevents the policy issued by the defendant from being enforced according to its plain and ordinary meaning.
The plaintiff concedes that the 1985 amendment to Neb.Rev.Stat. § 60-302 (Reissue 1988) requiring proof of financial responsibility for registration of a motor vehicle was not in effect on the date of the accident in this case. We have previously held that the Nebraska financial responsibility act has no application to an insurance policy that has not been used as proof of financial responsibility in the future. Reserve Ins. Co. v. Aguilera, 181 Neb. 605, 150 N.W.2d 114 (1967).
Although the courts in other jurisdictions that have considered the question of whether such an exclusion is contrary to public policy have reached different conclusions, see Annot., 52 A.L.R.4th 18 (1987), we find that the exclusion involved in this case is not contrary to the public policy of this state upon the facts of this case.
In Allstate Insurance Company v. Boles, 587 F.Supp. 807 (S.D.Ind.1984), the plaintiff had commenced an action for a declaratory judgment to determine whether the household exclusion in a policy that it had issued was valid. The accident involved in that case occurred when the named insured was operating the automobile in which his wife was a passenger. The issue was whether the language of the policy excluded coverage for the liability of the named insured for the injuries to his wife. The court held that although the doctrine of interspousal immunity had been abrogated in Indiana in 1972, the exclusion in the policy issued by the plaintiff was not contrary to the public policy of Indiana. The court stated:
The citations to the Court of Appeals of Indiana reflect the well-established judicial support for allowing parties to insurance contracts to determine what risks are to be afforded coverage in a particular transaction. In the absence of statutory requirements, Indiana courts have been reluctant to assume legislative power and require that particular types of insurance coverage be purchased. Likewise, the Courts have often refused to provide coverage that was clearly not intended to be purchased by the insured or provided by the insurer. The Supreme Court of Indiana would not characterize the household exclusion clause now before this Court as contrary to public policy, and therefore invalid, because to do so would contravene the wellestablished rule of law that where the terms of an insurance contract are clear and unambiguous the parties are bound *680 by those terms. Furthermore, the household exclusion clause does not contravene a positive statute.
....
... Just as a woman that is married may contract to sell or purchase real estate, for example, she may contract for insurance protection. To conclude that the Supreme Court of Indiana intended to force husbands to purchase insurance protection for their wives would thus be contrary to both statutory and the wellestablished rule of law that a female spouse is no longer chattel of her husband. And, it would be contrary to the very nature of the Court's decision: married women have individual rights separate from their spouses. "The right to sue a spouse for injuries caused by that spouse is an entirely separate matter from the contractual obligation of an insurance company to pay for those injuries." Porter v. Farmers Insurance Co., 102 Idaho 132, 627 P.2d 311, 315 (1981).
Allstate Insurance Company, supra at 812-13.
Later in the same case, upon certification of a question of state law from the U.S. Court of Appeals for the Seventh Circuit, the Indiana Supreme Court reached the same result. In Allstate Insurance Company v. Boles, 481 N.E.2d 1096, 1098-99, 1101 (Ind.1985), the court said:
This Court is of the opinion that the insurance policy provision commonly referred to as the "household exclusion clause" does not contravene any public policy of Indiana, explicitly or implicitly expressed in case or statutory law. Accordingly, the household exclusion clause in insurance contracts are [sic] valid and enforceable such that it may preclude liability coverage of injuries sustained by the spouse of an insured.
....
... We are now confronted with whether the right of a spouse to sue another spouse in tort should supercede the latter spouse's right to freely contract with an insurance company. We think not and agree with the following rationale stated by the Idaho Supreme Court in Porter v. Farmers Insurance Co., 102 Idaho 132, 627 P.2d 311, (1981), when that Court was confronted with this same issue:
"The right to sue a spouse for injuries caused by that spouse is an entirely separate matter from the contractual obligation of an insurance company to pay for those injuries."
....
Whenever a court considers invalidating a contract on public policy grounds, it must always weigh in the balance the parties' freedom to contract. Although special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and the insured's [sic], if a contract is clear and unambiguous, the language therein must be given its plain meaning. Vernon Fire and Casualty Co. v. American Underwriters, Inc., 171 Ind.App. 309, 356 N.E.2d 693 (1976). The household exclusion clause is clear and unambiguous. Further, as seen in our analysis, it does not contravene public policy reflected in our case law or motor vehicle statutes. Accordingly, our answer to the certified question is that a household exclusion provision of an automobile insurance policy is not contrary to public policy of Indiana, as expressed in statute or case law, when applied to preclude liability coverage of injuries sustained by the spouse of an insured.
See, also, Porter v. Farmers Ins. Co. of Idaho, 102 Idaho 132, 627 P.2d 311 (1981); Walker v. American Family Mut. Ins. Co., 340 N.W.2d 599 (Iowa 1983); 12 G. Couch, Cyclopedia of Insurance Law, §§ 45:486-87 (rev. 2d ed. 1981); 6C J. & J. Appleman, Insurance Law and Practice, § 4409 (R. Buckley ed. 1979).
For the reasons stated, the answer to the second question is also yes.
JUDGMENT ENTERED.
WHITE, Justice, dissenting.
The Farmers' policy use of the imprecise term "insured" interchangeably with the *681 exact term "named insured" has compounded the difficulties inherent in attempting any rational understanding of the meaning of the classic example of legal obfuscation, the American automobile liability insurance contract.
Having created this tangle, Farmers urges us to apply the most restrictive possible meaning to the document. The majority dutifully complies.
That the document is ambiguous, I submit, is obvious; therefore, the meaning most favorable to the policyholder should be adopted.
I dissent.