NATIONAL AMERICAN INSURANCE COMPANY OF NEBRASKA, INC., ALSO KNOWN AS COLUMBIA NATIONAL INSURANCE COMPANY OF NEBRASKA, INC., APPELLEE AND CROSS-APPELLEE, V. CONTINENTAL WESTERN INSURANCE COMPANY, APPELLANT AND CROSS-APPELLEE, AND MICHAEL AMICK ET AL., ECONOMY FIRE & CASUALTY COMPANY, DEFENDANT AND THIRD-PARTY PLATINIFF, AND RITA WELSH, THIRD-PARTY DEFENDANT, APPELLEES, CROSS-APPELLANTS, AND CROSS-APPELLEES.

502 N.W.2d 817

Filed July 16, 1993.   No. S-91-001.

Alan L. Plessman for appellant.

William J. Brennan, Jr., of Fitzgerald, Schorr, Barmettler & Brennan, for appellee National American Insurance Co.

Richard J. Rensch and Patrick M. Heng, of Raynor, Rensch & Pfeiffer, for appellees Amick.

Lyman L. Larsen and Daniel P. Chesire, of Kennedy, Holland, DeLacy & Svoboda, for appellees Welsh.

Edward F. Noethe and P. Shawn McCann, of Sodoro, Daly & Sodoro, for appellee Economy Fire & Casualty Co.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

FAHRNBRUCH, J.

This declaratory judgment action involves whether any of three automobile liability policies issued by separate insurance companies affords coverage for injuries suffered in an accident by the son of an insured under one of the policies. The injured son was a passenger in his family's automobile that was being driven by his friend.

The district court for Douglas County determined that appellant, Continental Western Insurance Company (Continental Western), provided primary liability coverage; that appellee Economy Fire & Casualty Company (Economy) provided secondary coverage; and that there was no coverage provided by appellee National American Insurance Company of Nebraska, Inc. (National American).

We modify the amount of attorney fees Economy was ordered to pay, reverse the judgment of the district court as to Continental Western's liability, and remand the cause with directions.

## FACTS

On June 19, 1987, Christopher Welsh, Michael Amick, and a third party were involved in a one-car accident near Spencer,

Iowa. Michael Amick claims he was injured. At the time of the accident, Christopher Welsh was driving a 1985 Volkswagen convertible owned by Kevin and Ann Amick, Michael's parents. The Amicks' automobile was insured under a Continental Western personal automobile liability policy. James R. and Rita Welsh, Christopher's parents, had personal automobile liability insurance with Economy. In addition, James Welsh's law firm, Welsh & Sibbernsen, had a commercial automobile liability policy with National American.

In a separate action, Michael Amick sued Christopher Welsh for the injuries Michael Amick claimed he sustained in the accident. Christopher Welsh's father asked each of the three insurance companies involved here to afford a defense to Michael Amick's suit. Each refused. National American sought a declaratory judgment that its automobile liability policy did not provide coverage for bodily injury to Michael Amick, that the Continental Western and Economy policies provided coverage, and that those companies had a duty to defend Christopher Welsh.

In their cross-petition, the Amicks sought a declaratory judgment that all three policies provided coverage for Michael Amick's claims against Christopher Welsh. The Welshes in their cross-petition sought a declaratory judgment that National American and Continental Western provided coverage. Economy, in its cross-petition, also sought a declaratory judgment that the National American and Continental Western policies provided coverage and that those companies had a duty to defend Christopher Welsh. Economy sued Rita Welsh as a third-party defendant, asking reformation of its policy to show that Economy provided no coverage for Christopher Welsh while he was driving any vehicle and seeking a declaratory judgment that it had no duty to defend Christopher Welsh or to provide coverage to him.

Continental Western, the Amicks' insurer and the appellant in this case, contends that it is not liable under the terms of its policy endorsement "PP 03 26," a household exclusion endorsement, which provides: "We do not provide Liability Coverage for any person for bodily injury to you or any family member." (Emphasis omitted.)

On July 16, 1990, the district court found that endorsement

PP 03 26 was unenforceable because it was contrary to Neb. Rev. Stat. § 60-534 (Reissue 1988). The court further declared that the Continental Western policy provided primary liability coverage up to its policy limits for Michael Amick's claim against Christopher Welsh, that Economy provided secondary coverage, and that the National American policy provided no coverage.

The district court awarded attorney fees of $32,770 in favor of the Amicks and against Continental Western and $16,174 in favor of the Welshes and against Economy. Continental Western, Economy, the Welshes, and the Amicks filed motions for new trial, which were overruled. Continental Western then timely appealed to this court. Economy, the Welshes, and the Amicks cross-appealed.

## ASSIGNMENTS OF ERROR

On appeal, Continental Western makes seven assignments of error, which combine to assert that the trial court erred in (1) finding that its endorsement PP 03 26 was void as against public policy and was contrary to § 60-534, (2) awarding the Amicks attorney fees of $32,770 against Continental Western, and (3) overruling Continental Western's motion for new trial.

On cross-appeal, Economy makes seven assignments of error, which combine to allege that the trial court erred in (1) failing to reform the Economy policy to reflect the true intentions of the contracting parties that there was no coverage for Christopher Welsh; (2) awarding attorney fees in favor of the Welshes against Economy; (3) allowing recovery for nontaxable court costs, including expert witness fees, under Neb. Rev. Stat. § 44-359 (Reissue 1988); and (4) failing to reform National American's policy to provide coverage for Christopher Welsh.

The Amicks' sole assignment of error on cross-appeal is that the trial court erred in failing to award attorney fees in favor of the Amicks and against Economy pursuant to § 44-359.

The Welshes' sole assignment of error on cross-appeal is that the trial court erred in failing to grant an award of attorney fees in favor of the Welshes and against Continental Western pursuant to § 44-359.

## SCOPE OF REVIEW

"Interpretation of an unambiguous term or provision in an insurance policy presents a question of law." *State Farm Mut. Auto. Ins. Co. v. Hildebrand, ante* p. 743, 746, 502 N.W.2d 469, 471 (1993). Accord *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., post* p. 779, 502 N.W.2d 484 (1993). " 'In an appeal from a declaratory judgment, the appellate court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court.' " *State Farm Mut. Auto. Ins. Co. v. Hildebrand, ante* at 746, 502 N.W.2d at 471. Accord *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., supra.*

## ANALYSIS

### FAMILY EXCLUSION ENDORSEMENT

Initially, we determine the effect of Continental Western's endorsement PP 03 26, commonly known as a household exclusion endorsement.

The Amicks' "Select Personal Auto Policy" with Continental Western, in "Part A — Liability Coverage," stated in relevant part: "We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." "Insured" is defined by the policy as "[a]ny person using 'your covered auto.' " It is undisputed that Christopher Welsh was driving one of the Amicks' covered automobiles, that he was driving it with Michael Amick's permission, and that Christopher Welsh was an insured under the policy.

However, the liability coverage provided the Amicks by Continental Western at the time of the accident was subject to exclusion endorsement PP 03 26. That endorsement stated: "We do not provide Liability Coverage for any person for bodily injury to you or any **family member**." According to the unambiguous terms of endorsement PP 03 26, Continental Western did not provide liability coverage for bodily injury to Michael Amick, since he was an Amick family member.

The appellees argue that the endorsement is inconsistent with both public policy and the legislative will as contained in § 60-534. Section 60-534 states:

[A motor vehicle liability policy certified as proof of financial responsibility:] (1) Shall designate by explicit description . . . all motor vehicles with respect to which coverage is thereby to be granted; and (2) shall insure the person named therein and any other person, as insured, using any such motor vehicle . . . with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the . . . use of such motor vehicle . . . .

Today, this court decided the validity of the household exclusion in *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., post* p. 779, 502 N.W.2d 484 (1993), and *State Farm Mut. Auto. Ins. Co. v. Hildebrand, ante* p. 743, 502 N.W.2d 469 (1993). In those cases, we noted that § 60-534 is part of the Motor Vehicle Safety Responsibility Act, Neb. Rev. Stat. § 60-501 et seq. (Reissue 1988) (providing in § 60-507 for suspension of the motor vehicle operator's license of any operator involved in an accident in Nebraska which results in bodily injury, death, or substantial property damage, if the operator does not have motor vehicle liability insurance or other proof of financial responsibility at the time of the accident, and continuing until the operator provides proof of future financial responsibility).

In *Allied Mut. Ins. Co.*, the court held that

> the definition of "financial responsibility," used in § 60-501(10), applies only to policies used as proof of financial responsibility specifically required for compliance with the Nebraska Motor Vehicle Safety Responsibility Act. In all other situations, "[t]he parties to an insurance contract may contract for any lawful coverage, and the insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute." *Allstate Ins. Co. v. Farmers Mut. Ins. Co.*, 233 Neb. 248, 252, 444 N.W.2d 676, 679 (1989).

*Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., post* at 783, 502 N.W.2d at 487.

Therefore,

> a household exclusion clause contained in a policy of

motor vehicle liability insurance that is not used as proof of future financial responsibility under the Motor Vehicle Safety Responsibility Act does not violate public policy of the State of Nebraska and is an enforceable provision in a policy of motor vehicle liability insurance.

*State Farm Mut. Auto. Ins. Co. v. Hildebrand, ante* at 749, 502 N.W.2d at 473. Accord *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., supra.*

The Amicks' Continental Western liability insurance was not a policy used as proof of financial responsibility as defined by the Motor Vehicle Safety Responsibility Act. Consequently, endorsement PP 03 26 violates neither public policy nor § 60-534, and coverage for Michael Amick's injuries is expressly excluded by the terms of the Continental Western policy. We reverse the judgment of the district court finding that the Continental Western policy provided coverage for Michael's injuries.

In view of the foregoing holding, we need not reach Continental Western's assigned error appealing the overruling of its motion for new trial.

### REFORMATION OF ECONOMY'S POLICY

Economy argues that the district court erred by failing to reform its policy to reflect the true intention of the parties that there be no liability coverage under the policy for Christopher Welsh.

> Reformation [of a written instrument] may be decreed where there has been a mutual mistake or where there has been a unilateral mistake caused by the fraud or inequitable conduct of the other party. The mistake must be proven by clear and convincing evidence.. [Citations omitted.] The evidence of the true intent of the parties must be clear, convincing, and satisfactory, and the evidence must establish that the mutual mistake involved is common to both parties, each laboring under the same misconception.

*Jones v. Employers Mut. Cas. Co.*, 230 Neb. 549, 560, 432 N.W.2d 535, 542 (1988).

Economy does not allege that the Welshes engaged in any

form of fraud or inequitable conduct leading to a unilateral mistake by Economy in the issuance of the policy in question. Rather, Economy contends that there was a mutual mistake because both Economy's underwriter and the Welshes understood that Christopher Welsh was to be totally excluded from liability coverage under the policy.

The record indicates that the Welshes' automobile insurance with a previous insurer was canceled effective October 10, 1986, due to the poor driving records of Christopher Welsh and another of the Welsh children, Amy. The Welshes then applied for insurance with Economy through their agent, Andy Sibbernsen. Andy Sibbernsen testified that Economy agreed to issue a policy to the Welshes only if Christopher and Amy Welsh were excluded from coverage under the policy.

Economy then issued an "Econo-Plan Personal Auto Policy" to James and Rita Welsh, effective December 13, 1986, subject to a named driver exclusion endorsement. The endorsement listed "Amy Welsh and Christopher Welsh, children of insured," as drivers to be excluded under the policy. This policy expired June 13, 1987. The policy was renewed for the period from June 13 through December 13, 1987.

The Economy renewal policy issued to James and Rita Welsh effective June 13, 1987, provided liability coverage for "bodily injury or property damage for which any insured becomes legally responsible because of an auto accident." (Emphasis omitted.) "Insured" was defined in that section of the policy to mean: "You or any family member for the . . . use of *any auto* or trailer." (Emphasis omitted.) (Emphasis supplied.) Absent the named driver exclusion endorsement, Christopher Welsh would have been an insured under the Economy policy while using any automobile by virtue of being a member of the Welsh family.

However, the named driver exclusion endorsement to the policy, dated June 13, 1987, and which was in effect at the time of the accident, stated in part: "[I]t is agreed that all coverage afforded by this policy is void and shall not apply to any claim or suit which occurs as a result of *any covered vehicle* being operated by the following person(s): Christopher - Son of the Named Insured." (Emphasis supplied.) At the bottom of the

exclusion form was a space to indicate acceptance of the endorsement by the named insured, and which was signed "James R. Welsh." James Welsh testified that the signature on the exclusion endorsement was his, although he could not recall if he had read the exclusion. He further testified that he had told an attorney for the Amicks that none of the Welshes' automobile policies would cover Christopher Welsh for the accident in question.

A marketing underwriting manager for Economy testified that it was Economy's intent to totally exclude Christopher and Amy Welsh from coverage under the policy. He conceded that the language of the named driver exclusion endorsements to the Welshes' policy did not exclude nonowned automobiles.

An insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made; where the terms of the contract are clear, they are to be accorded their plain and ordinary meaning. *Economy Preferred Ins. Co. v. Mass*, 242 Neb. 842, 497 N.W.2d 6 (1993); *Thorell v. Union Ins. Co.*, 242 Neb. 57, 492 N.W.2d 879 (1992).

Economy has failed to show by clear and convincing evidence that there was a mutual mistake as to the terms of its exclusion endorsement for Christopher Welsh. Indeed, the terms of the endorsement drafted by Economy are the best evidence of Economy's intent, and the terms of that endorsement are clear: Christopher Welsh was excluded from coverage only for covered vehicles. The Amick Volkswagen was not a covered vehicle under Economy's policy, and Economy's exclusion endorsement therefore was not applicable to that vehicle.

The district court correctly denied Economy's request for reformation of its policy and erred only to the extent that it found Economy's policy provided excess coverage for Christopher Welsh's liability to Michael Amick. Because we have held above that Continental Western's policy provided no coverage, we now hold that Economy's policy provided coverage for Christopher Welsh's liability to Michael Amick.

### REFORMATION OF NATIONAL AMERICAN'S POLICY

Economy contends that the district court erred in failing to

reform National American's policy to provide coverage to Christopher Welsh. National American counters that Economy lacks standing to request reformation of National American's policy.

Whether one insurance company may seek reformation of another insurance company's policy is a question of first impression for this court. As a general rule, "[r]eformation of written instruments may be had by the immediate parties thereto and by those standing in privity with them . . . a person not a party or privy to the transaction in question with a substantial interest therein may not maintain the action." 76 C.J.S. *Reformation of Instruments* § 47 at 400-01 (1952).

Other jurisdictions which have considered the issue of reformation of insurance contracts have held that the right to reformation belongs solely to the contracting parties, their assignees, or their intended beneficiaries. See, *Starr v. Nationwide Mut. Ins. Co.*, 548 A.2d 22 (Del. Ch. 1988), *aff'd* 575 A.2d 1083 (Del. 1990) (holding that injured passenger lacked standing to seek reformation of insured's uninsured motorist coverage); *International Service Ins. Co. v. Gonzales*, 194 Cal. App. 3d 110, 239 Cal. Rptr. 341 (1987) (holding that neither accident victim nor former wife of insured had standing to seek reformation of insured's automobile disability policy); *Biondo v Ridgemont Ins Agency*, 104 Mich. App. 209, 304 N.W.2d 534 (1981) (holding that insurance agency that failed to notify company of a change in coverage requested by insured lacked standing to seek reformation of insured's theft insurance coverage).

Economy is not a party to the automobile insurance contract between National American and the Welsh & Sibbernsen law firm, nor is Economy in privity with either of the parties as to that insurance contract. Economy is not an assignee of either party, nor can it be said that Economy is an intended beneficiary of the contract.

Therefore, consistent with the general rule as well as the decisions of other jurisdictions, we hold that Economy lacks standing to seek reformation of National American's policy and that its assignment of error is without merit.

ATTORNEY FEES

Several of the parties have raised assignments of error related to attorney fees, which we consider together. Initially, we consider Economy's claim that the district court's award of fees for the cost of expert witnesses and for photocopying was erroneous because these costs are not recoverable under § 44-359.

Economy cites no authority in support of this proposition, and in fact, previous holdings of this court are to the contrary. See, *Craig v. Farmers Mut. Ins. Co.*, 239 Neb. 271, 476 N.W.2d 529 (1991) (affirming an award of attorney fees which included air travel expenses incurred by the attorney); *Schmer v. Hawkeye-Security Ins. Co.*, 194 Neb. 94, 230 N.W.2d 216 (1975) (upholding an award of attorney fees of $2,460.51 plus $615.66 for expenses of an undisclosed nature). We perceive no rational basis for distinguishing an attorney's expenses for consultation with an expert or for photocopying from other expenses necessary to a client's representation. This assignment of error is without merit. However, that is not to say that Economy is necessarily liable for these claimed expenses, as we discuss below.

Next, we turn to the issue of attorney fees awarded in favor of the Amicks against Continental Western. Having held that Continental Western is not liable for Michael Amick's personal injuries, we reverse the order of the district court granting attorney fees in favor of the Amicks and against Continental Western in the amount of $32,770. See § 44-359. Obviously, this is also dispositive of the Welshes' cross-appeal claiming that the district court erred in failing to award them attorney fees against Continental Western.

Finally, we address whether Economy is liable to either the Welshes or the Amicks for attorney fees pursuant to § 44-359. Economy appeals the award of attorney fees in favor of the Welshes, arguing that it is not liable for services rendered in connection with Continental Western and National American and that the hourly rates were excessive.

There is no doubt that Economy is liable to the Welshes for attorney fees. "Attorney fees may be awarded under § 44-359 in declaratory judgment actions, [citation omitted] even if it is

the insurer who institutes the action." *Union Ins. Co. v. Bailey,* 234 Neb. 257, 264, 450 N.W.2d 661, 666 (1990). Economy sued its insured Rita Welsh, seeking a declaratory judgment that it was not liable for the defense or coverage of Christopher Welsh.

Additionally, Michael Amick, as an injured party, is a beneficiary of the Welshes' insurance contract with Economy. See *Metcalf v. Hartford Acc. & Ind. Co.,* 176 Neb. 468, 126 N.W.2d 471 (1964). Because the Welshes and the Amicks have prevailed in this action as to Economy, they are entitled to reasonable attorney fees pursuant to § 44-359.

When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Young v. Dodge Cty. Bd. of Supervisors,* 242 Neb. 1, 493 N.W.2d 160 (1992).

In determining the value of legal services rendered by an attorney, it is proper to consider the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. *Schmer v. Hawkeye-Security Ins. Co., supra.*

As Economy correctly argues, an attorney fee awarded under the provisions of § 44-359 "must be *solely* and only for services actually rendered in the preparation and trial of the litigation *on the policy in question.*" (Emphasis supplied.) *Hemenway v. MFA Life Ins. Co.,* 211 Neb. 193, 203, 318 N.W.2d 70, 76 (1982). Therefore, any award of attorney fees against Economy for services rendered in the preparation and trial of the litigation on the other two policies constitutes an abuse of discretion, and such fees are hereby disallowed, and the award to the Welshes is modified.

After consideration of the factors to be considered in setting attorney fees, we determine reasonable attorney fees to be $10,000 apiece for the Welshes and the Amicks for legal services rendered in the district court, plus an additional $2,500 apiece for services in this court, all to be paid by Economy.

## CONCLUSION

We have fully considered other arguments of the parties and find that they are without merit. The judgment of the district court is affirmed in part as modified and reversed in part, and the cause is remanded to the district court for the entry of judgment not inconsistent with this opinion.

AFFIRMED IN PART AS MODIFIED, AND IN PART
REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, J., not participating.