STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A CORPORATION, APPELLANT AND CROSS-APPELLEE, V. PATRICIA A. HILDEBRAND, A SINGLE PERSON, ET AL., APPELLEES AND CROSS-APPELLANTS.
SCOTT S. RUDO, A SINGLE PERSON, APPELLEE, V. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLANT.

502 N.W.2d 469

Filed July 16, 1993.    Nos. S-90-1067, S-92-169.

Michael F. Coyle, Mary Kay Frank, and Roger L. Shiffermiller, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellant.

P. Shawn McCann and Clark J. Vanskiver, of Sodoro, Daly & Sodoro, for appellees Hildebrand et al.

Raymond Speer and Gregory Garland, of Garland Law, P.C., for appellee Rudo.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

PER CURIAM.

These cases, consolidated for disposition by this court, are declaratory judgment actions concerning the validity of the household exclusion contained in the State Farm automobile insurance policy involved in each case. In both cases, the district court held that the household exclusion is against public policy

of the State of Nebraska and, therefore, is void. We reverse, and remand with direction.

## FACTS

Both actions involved one-vehicle accidents in which the passenger sustained personal injury.

In the Hildebrand case, State Farm sought a declaratory judgment that it had no duty to defend or pay any judgment in regard to any negligence action brought by Patricia A. Hildebrand or her parents concerning a motor vehicle accident that occurred on September 18, 1987. At the time of the accident, Hildebrand was a passenger in a pickup truck which she owned and which was being driven by Susan Walters with Hildebrand's permission. In the one-vehicle accident, the pickup went into a ditch and rolled over, resulting in Hildebrand's personal injury. At the time of the accident, State Farm had liability insurance coverage on the Hildebrand pickup. After Hildebrand and her parents made a claim against State Farm under the personal injury liability coverage of the policy on the pickup, State Farm filed its declaratory judgment action against Hildebrand and her parents.

In the Rudo case, the litigation involved an accident that occurred on September 30, 1989. Before the accident, and so that Scott S. Rudo could finish his senior year of high school in Omaha, Rudo moved in with his brother-in-law, Eric Hayes, and the Hayes family. State Farm had issued a motor vehicle liability policy on a Ford Escort which was owned by Hayes' employer, Roche, Inc., doing business as The Copy Center. Hayes was authorized to use the Escort for both business and personal reasons. After visiting friends and while returning to the Hayes home, Hayes was driving the Escort, in which Rudo was a passenger. When Hayes swerved to miss an oncoming vehicle, the Escort hit some loose gravel, went into a ditch, and overturned, resulting in Rudo's personal injury. After State Farm denied coverage for Rudo's personal injury claim, Rudo brought a declaratory judgment action, seeking a judgment that there was insurance coverage for his injury sustained in the automobile accident.

Pertaining to the motor vehicles involved in both of the

cases, State Farm had issued policies of liability insurance coverage which state that State Farm will "pay damages which an insured becomes legally liable to pay because of . . . bodily injury to others, and . . . caused by accident resulting from the ownership, maintenance or use of your car." (Emphasis omitted.) The policies further state that when "your car" is referred to, "insured" includes "any other person while using such a car if its use is within the scope of consent of you or your spouse." (Emphasis omitted.) Each of the policies also contains the following exclusion, commonly referred to as the "household exclusion," printed in all capital letters: "There is no coverage: . . . . For any bodily injury to: . . . . Any insured or any member of an insured's family residing in the insured's household." (Emphasis omitted.)

Hildebrands and Rudo each moved for a summary judgment. The district courts granted summary judgments, declaring that the household exclusion in the State Farm policies violates Neb. Rev. Stat. § 60-534 (Reissue 1988) (policy contents for proof of financial responsibility under the Motor Vehicle Safety Responsibility Act) and, therefore, violates public policy of the State of Nebraska. In Hildebrands' case, the district court held that the language of the household exclusion clause is not ambiguous and awarded Hildebrands an attorney fee in their action against State Farm.

Section 60-534 is contained in the "Proof of Financial Responsibility" section of Nebraska's Motor Vehicle Safety Responsibility Act, Neb. Rev. Stat. § 60-501 et seq. (Reissue 1988 & Supp. 1989), and governs "certified" policies. Section 60-534 states:

> Such motor vehicle liability policy: . . . [S]hall insure the person named therein and any other person, as insured, using any such motor vehicle . . . with the express or implied permission of such named insured, against loss . . . for damages arising out of the . . . use of such motor vehicle . . . within the United States of America . . . .

### ASSIGNMENTS OF ERROR

In summary, State Farm contends that the district court erred in holding that the household exclusion clause in State

Farm's automobile insurance policies is against public policy and, therefore, is void. State Farm also argues that the district court erred in awarding an attorney fee to Hildebrands.

In their cross-appeal, Hildebrands argue that the household exclusion clause in the State Farm policy is ambiguous.

## STANDARD OF REVIEW

Interpretation of an unambiguous term or provision in an insurance policy presents a question of law. See *Polenz v. Farm Bureau Ins. Co.*, 227 Neb. 703, 419 N.W.2d 677 (1988). "In an appeal from a declaratory judgment, the appellate court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court." *State ex rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 265, 445 N.W.2d 284, 287 (1989). Accord *State Bd. of Ag. v. State Racing Comm.*, 239 Neb. 762, 478 N.W.2d 270 (1992). See, also, *Huffman v. Huffman*, 232 Neb. 742, 441 N.W.2d 899 (1989).

## HOUSEHOLD EXCLUSION

Both Hildebrands and Rudo argue that the household exclusion in State Farm's policies is contrary to Nebraska's public policy evidenced by Neb. Rev. Stat. § 60-302 (Reissue 1988) (proof of financial responsibility for registration of a motor vehicle) and, therefore, is unenforceable. Additionally, Hildebrands argue that as the result of the 1985 amendments to § 60-302, the Legislature elected to treat all motor vehicle liability insurance policies as certified policies, and, therefore, because the household exclusion is not authorized by § 60-537 (permissible exclusions in a certified policy) or § 60-540 (permissible provisions in a certified policy), the household exclusion is invalid.

Section 60-302 provides, in pertinent part:

No motor vehicle . . . shall be operated on the highways of this state unless such vehicle is registered in accordance with Chapter 60, article 3. . . .

*All applications for registration of motor vehicles shall be accompanied by proof of financial responsibility.* Proof of financial responsibility shall be evidenced by a copy of proof of financial responsibility filed pursuant to

> subdivision (2), (3), or (4) of section 60-528 bearing the seal of the Department of Motor Vehicles *or* by a certificate or policy of insurance. Such certificate or policy of insurance shall be written by an insurance carrier duly authorized to do business in this state and shall certify that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. Such certificate or policy shall give the effective dates of such motor vehicle liability policy . . . and shall designate . . . all motor vehicles covered thereby.

(Emphasis supplied.) Section 60-302 contains no other specifications concerning the contents of the insurance certificate or liability insurance policy required for registration of a motor vehicle.

Neb. Rev. Stat. §§ 44-508 and 44-514 to 44-521 (Reissue 1988 & Cum. Supp. 1992) prescribe standard and general requirements for a valid policy of motor vehicle liability insurance in Nebraska and, consequently, do prescribe certain limited requirements for policies of motor vehicle liability insurance. However, these statutes do not mention any exclusion, such as the household exclusion in question, and do not contain any language that prohibits an exclusionary clause in a policy of motor vehicle liability insurance; hence, §§ 44-508 and 44-514 to 44-521 contain no statutory language limiting or prohibiting an insurer's potential liability under the household exclusion clause contained in a motor vehicle policy.

The district courts, relying on the requirements expressed in § 60-534 concerning a policy of motor vehicle liability insurance in reference to proof of financial responsibility, concluded that the household exclusion was invalid. Section 60-534 is part of the Motor Vehicle Safety Responsibility Act and mandates that automobile liability policies provide certain minimum insurance coverage. The Motor Vehicle Safety Responsibility Act provides for suspension of the license of any operator of a motor vehicle involved in an accident in Nebraska that results in bodily injury, death, or substantial property damage when the operator does not have motor vehicle liability insurance or other proof of financial responsibility at the time

of the accident. Suspension continues until the operator provides proof of future financial responsibility. See §§ 60-507 and 60-508.

However, the scope of the Motor Vehicle Safety Responsibility Act is limited. As § 60-533 specifically states:

> A motor vehicle liability policy, as said term is used in sections 60-501 to 60-569, shall mean an owner's or an operator's policy of liability insurance, certified as provided in sections 60-529 to 60-531 as proof of financial responsibility, and issued, except as otherwise provided in section 60-531 by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

(Emphasis supplied.) By its own terms, the Motor Vehicle Safety Responsibility Act specifies provisions for only those insurance policies certified pursuant to the act and used for compliance with the act. Consequently, the Motor Vehicle Safety Responsibility Act does not apply to insurance policies that are not used as proof of financial responsibility. Also, § 60-302 does not incorporate the requirements of the Motor Vehicle Safety Responsibility Act as a part of the proof of financial responsibility required to register a motor vehicle.

In *Equity Mut. Ins. Co. v. Allstate Ins. Co.*, 190 Neb. 515, 518-19, 209 N.W.2d 592, 594 (1973), this court noted that

> [w]ith most kinds of insurance the Legislature has specified various requirements as to particular provisions required to be included or omitted. Fire insurance policies, life insurance policies, and health and accident policies all must meet this type of statutory requirement. The statutory requirements for automobile liability insurance with respect to such provisions have been under the Motor Vehicle Safety Responsibility Act. In 1965 the Legislature amended the . . . Act to provide specifically that sections 60-516 to 60-544, R. R. S. 1943, shall not apply to any automobile liability policy which has not been certified as provided by sections 60-528 to 60-531, R. R. S. 1943. As a result of that amendment, this court held in State Farm Mut. Auto. Ins. Co. v. Pierce, 182 Neb. 805, 157 N. W. 2d 399, that the omnibus clause requirement is applicable

only to automobile liability insurance policies which have been certified as proof of financial responsibility. We held also that a driver exclusion agreement limiting the coverage of an automobile liability insurance policy to a particular driver was not against public policy. *Automobile liability insurance policies which are not certified as proof of financial responsibility, except for minimum coverage limits and uninsured motorist provisions, are subject to virtually no statutory directives.* (Emphasis supplied.)

More recently, in *Allied Mut. Ins. Co. v. Musil*, 242 Neb. 64, 69, 493 N.W.2d 171, 174 (1992), this court held that § 60-535 pertains "only to policies which have been filed with the Nebraska Department of Motor Vehicles and certified as proof of future financial responsibility pursuant to the requirements of the [Motor Vehicle Safety Responsibility Act]."

As we held in *Allstate Ins. Co. v. Farmers Mut. Ins. Co.*, 233 Neb. 248, 252, 444 N.W.2d 676, 679 (1989), "[t]he parties to an insurance contract may contract for any lawful coverage, and the insurer may limit its liability and impose restrictions and conditions upon its obligation . . . not inconsistent with public policy or statute."

Having been directed to no statute which mandates that noncertified automobile liability insurance policies provide categorical coverage for an insured under a policy of motor vehicle liability insurance, we hold that a household exclusion clause contained in a policy of motor vehicle liability insurance that is not used as proof of future financial responsibility under the Motor Vehicle Safety Responsibility Act does not violate public policy of the State of Nebraska and is an enforceable provision in a policy of motor vehicle liability insurance. For that reason, the district courts erred in their judgments that the household exclusion clause in State Farm's policies violates Nebraska's public policy and, therefore, is void.

## IS THE EXCLUSION AMBIGUOUS?

In their cross-appeal, Hildebrands argue that the household exclusion clause in State Farm's policy is ambiguous for two reasons. Hildebrands contend, first, that it is not clear whether

the policy language should be read in the disjunctive or the conjunctive sense and, second, that it would be unreasonable to deny coverage to all parties under the facts of Hildebrands' case.

> An insurance policy should be considered as any other contract and be given effect according to the ordinary sense of the terms used, and if they are clear they will be applied according to their plain and ordinary meaning. . . . An ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract.

*Allstate Ins. Co. v. Farmers Mut. Ins. Co.*, 233 Neb. at 252, 444 N.W.2d at 678-79.

As noted above, "Section I — Liability — Coverage A" of the State Farm policy states that State Farm will "pay damages which an insured becomes legally liable to pay because of . . . bodily injury to others, and . . . caused by accident resulting from the ownership, maintenance or use of your car." (Emphasis omitted.) The policy further states that when "your car" is referred to, "insured" includes

1. you;

2. your spouse;

3. the relatives of the first person named in the declarations;

4. any other person while using such a car if its use is within the scope of consent of you or your spouse; and

5. any other person or organization liable for the use of such a car by one of the aboved insureds.

(Emphasis omitted.) Section I of the policy also contains the household exclusion: "There is no coverage: . . . . For any bodily injury to: . . . . Any insured or any member of an insured's family residing in the insured's household." (Emphasis omitted.) Hildebrands argue that it is not clear whether the term "insured" in the household exclusion refers to an insured as defined in the five categories in the above quotation from State Farm's policy, that is, whether the categories are conjunctive or disjunctive. We disagree.

The above-mentioned provisions in State Farm's policy are all part of "Section I — Liability — Coverage A" of the

insurance agreement. Clearly, the household exclusion limits coverage under section I by excluding coverage for bodily injury suffered by *any* insured, which, by definition, includes any person using the named insured's car with the insured's permission. Furthermore, existence or extent of coverage does not determine whether an insurance policy's language is ambiguous. Thus, we find no ambiguity in the language of State Farm's policy and hold that the district court did not err in finding that the policy is unambiguous.

## ATTORNEY FEES

Neb. Rev. Stat. § 44-359 (Reissue 1988) provides that the court, "upon rendering judgment *against* [an insurance] company . . . shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs." (Emphasis supplied.) Because we have determined that the district court erred in Hildebrands' case by rendering a declaratory judgment against State Farm, Hildebrands are not entitled to an attorney fee authorized by § 44-359. Therefore, we reverse the district court's award of an attorney fee to Hildebrands.

## CONCLUSION

Because the household exclusion clause contained in State Farm's policies involved in these proceedings does not violate public policy of the State of Nebraska, the judgment in each of the consolidated cases is reversed, and these causes are remanded to the district courts with direction to enter judgments in favor of State Farm and consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTION.

SHANAHAN, J., concurring.

The district courts' decisions that the household exclusion in the automobile omnibus clause is contrary to the public policy of this state raise several concerns regarding Nebraska's kaleidoscopic collection of statutes regarding liability insurance coverage for motor vehicles, their drivers, and their passengers.

The district courts' decisions are based on the public policy doctrine: A court may refuse to enforce a contractual provision

that violates law or public policy. *The People v. Wiersema State Bank*, 361 Ill. 75, 197 N.E. 537 (1935). Fundamental to the district courts' decisions is the definition or characterization of "public policy." As the court observed in *Alderman et al. v. Alderman et al.*, 178 S.C. 9, 22-23, 181 S.E. 897, 902 (1935):

> "Public policy has been aptly described by one of our judges as 'a wide domain of shifting sands.[']" . . . The term in itself imports something that is uncertain and fluctuating, varying, with the changing economic needs, social customs, and moral aspirations of a people. . . . For that reason it has frequently been said that the expressive (expression?) public policy is not susceptible of exact definition. But for purposes of juridical application it may be regarded as well settled that a state has no public policy, properly cognizable by the Courts, which is not derived or derivable by clear implication from the established law of the State, as found in its Constitution, statutes, and judicial decisions. . . .
>
> " 'It is the duty of the Legislature to make laws and of the Court to expound them, . . . the subjects in which the Court undertakes to make the law by mere declaration (of public policy) should not be increased in number without the clearest reasons and the most pressing necessity.' " [Quoting from *Magee v. O'Neill*, 19 S.C. 170, 45 Am. Rep. 765 (1883).]

In a somewhat similar expression, the court stated in *Julien v. Model B., L. & I. Asso.*, 116 Wis. 79, 91, 92 N.W. 561, 565 (1902):

> When we leave constitutional limitations out of view, the will of the legislative branch of the government, when expressed, is the highest evidence of public policy. To judicially condemn its expressed will, when exercised within constitutional limitations, would be the plainest kind of usurpation. Baron Parke, in *Egerton v. Brownlow*, 4 H. L. Cas. 122, 123, expressed the same idea substantially thus: "It is the province of the statesman and not of the lawyer to discuss, and of the legislature to determine what is best for the public good, and to provide for it by proper enactments. It is the province of the judge

to expound the law, to declare public policy as he finds it in the unwritten and written law. Public policy is a proper ground for a decision only in the sense of the policy of the law, not in the sense of mere judicial notions as to what is best for the public good. An act [speaking of an act *inter partes*] is properly said to be illegal when it is contrary to the principles of established law."

See, also, *Griffith v. Mutual Protective League*, 200 Mo. App. 87, 105, 205 S.W. 286, 291 (1918):

The public policy of a State is to be found as expressed in its Constitution and laws, and in the decisions of its highest court, and not from general considerations of the supposed public interests and policy of the State beyond what such sources of information make known to the court.

Thus, the potency of public policy comes from moral, economic, institutional, and other social considerations. James A. Henderson, Jr., *Judicial Reliance on Public Policy: An Empirical Analysis of Products Liability Decisions*, 59 Geo. Wash. L. Rev. 1570 (1991).

Perhaps cognizant of the foregoing attempts to define "public policy," this court has condemned certain actions that violate Nebraska's public policy; for example, see, *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988) (an employee had a cause of action against an employer for discharging the employee, who had reported the employer's involvement in odometer fraud, which was a violation of Neb. Rev. Stat. § 60-2301 et seq. (Reissue 1984 & Cum. Supp. 1986) and which was punishable as a felony), and *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510 (1987) (an employer's discharge of an employee who refused to take a polygraph examination prohibited by the Licensing of Truth and Deception Examiner's Act, Neb. Rev. Stat. § 81-1901 et seq. (Reissue 1981 & Cum. Supp. 1984) was a violation of Nebraska's public policy). In the realm of insurance, however, courts must be especially careful when basing their decisions on public policy, because " '[i]nsurance is a matter of contract, not sympathy.' " *Howard v. Blue Cross Blue Shield*, 242 Neb. 150, 160, 494 N.W.2d 99, 105 (1993) (quoting *St. Paul Fire & Marine*

*Insurance Company v. Purdy*, 129 Ga. App. 356, 199 S.E.2d 567 (1973)). Moreover, in an area so pervasively regulated, "it is not the function of the judiciary to second-guess the wisdom, policy, or expediency of legislative enactments." *State v. Two IGT Video Poker Games*, 237 Neb. 145, 150, 465 N.W.2d 453, 458 (1991).

Although Nebraska's Legislature has not prescribed a program of compulsory liability insurance to protect those who use this state's public highways and streets, registration of a motor vehicle is conditioned on a showing that the vehicle to be registered is covered by liability insurance. See Neb. Rev. Stat. § 60-302 (Reissue 1988). Also, an owner of a Nebraska-licensed vehicle must have proof of financial responsibility, as required by § 60-302, in the vehicle when operated in Nebraska. Failure to have such certificate or proof in the motor vehicle is a misdemeanor. See Neb. Rev. Stat. § 60-570 (Reissue 1988). Moreover, a driver involved in certain vehicular accidents is required to show proof of insurance. Failure to show proof of financial responsibility will lead to suspension of the operator's license. See Neb. Rev. Stat. § 60-501 et seq. (Reissue 1988 & Supp. 1989). Thus, Nebraska owners and operators of vehicles are statutorily inculcated with the need for liability insurance coverage to protect themselves and other members of the motoring public. To the ordinary owner or operator, the standard insurance policy meets that personal and legal need. However, through smoke and mirrors, the household exclusion of the omnibus clause in the standard insurance policy presents an illusion of insurance. Take, for example, an owner of a vehicle who is riding in a vehicle which the owner has insured under a standard policy that includes the household exclusion. The driver is a member of the owner's household, say a son or daughter, or someone operating the vehicle with the owner's permission, such as a mechanic driving the owner home before embarking on repairs to the vehicle. As a result of the driver's negligence, an accident occurs, and the owner-passenger is seriously injured. In view of today's decision in these cases, the owner's liability insurance provides no coverage for indemnification of the owner's injury and loss.

To avoid the unfortunate result in the preceding illustration,

courts in some states have held that the household exclusion violates public policy. Those decisions, however, are based on certain statutes that required specific insurance; for example, see *Farmers Ins. Group v. Reed*, 109 Idaho 849, 712 P.2d 550 (1985) (Idaho Code § 49-233 (1978) required that "[e]very owner of a motor vehicle . . . shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or use of a motor vehicle," but the household exclusion clause left family members unprotected when another family or household member was driving; therefore, the household exclusion violated statutorily mandated insurance), and *Farmers Ins. Exchange v. Call*, 712 P.2d 231 (Utah 1985) (the Utah Automobile No-Fault Insurance Act mandated that all automobiles registered in Utah be covered by specific types of security in conformity with Utah's Motor Vehicle Safety Responsibility Act, which prohibited the household exclusion clause; hence, the household exclusion clause contravened the Utah Automobile No-Fault Insurance Act).

However, an inspection of the Nebraska statutes concerning liability insurance coverage on motor vehicles culminates in uncertainty regarding specific insurance on vehicles. Section 60-302 contains no specification for the contents of an insurance certificate or policy required for registration of a motor vehicle. Absence of specification in § 60-302 should cause little surprise in view of the other Nebraska statutes pertaining to motor vehicle insurance. Neb. Rev. Stat. § 44-514(1) (Cum. Supp. 1992) states: "Policy shall mean an automobile liability policy providing all or part of the coverage defined in subdivision (2) of this section . . . ." Section 44-514(2) then provides: "Automobile liability coverage shall include only coverage of bodily injury and property damage liability, medical payments, uninsured motorist coverage, and underinsured motorist coverage." Thus, under § 44-514, although an automobile liability policy may include coverage for bodily injury and property damage, medical payments, and damage caused by uninsured and underinsured motorists, none of these permissible coverages are required by law. Similarly,

§ 60-509.01 states that all liability policies delivered or issued in Nebraska must include uninsured motorist coverage, but an insured may reject uninsured motorist coverage. Likewise, the Underinsured Motorist Insurance Coverage Act, Neb. Rev. Stat. §§ 60-571 to 60-582 (Reissue 1989), requires that all motor vehicle liability policies include underinsured motorist coverage unless such coverage is rejected by the insured.

Section 60-508 of the Motor Vehicle Safety Responsibility Act provides that if an operator "had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident," his or her license will not be suspended following an accident. However, § 60-509 proceeds to state:

> No such policy . . . shall be effective under section 60-508 unless issued by an insurance company or surety company authorized to do business in this state . . . . Every such policy or bond is subject, if the accident has resulted in bodily injury, sickness, disease, or death, to a limit, exclusive of interest and costs, of not less than twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to such limit for one person, to a limit of not less than fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident and, if the accident has resulted in injury to or destruction of property, to a limit of not less than twenty-five thousand dollars because of injury to or destruction of property of others in any one accident.

Consequently, for compliance with the Motor Vehicle Safety Responsibility Act, an insurance policy must provide certain minimum coverages to preserve the license of an owner or operator who is involved in an accident within the purview of the act.

For registration of a motor vehicle in Nebraska, § 60-302 does not require any minimum insurance coverage such as that required by the Motor Vehicle Safety Responsibility Act. Although the Legislature obviously hoped to increase the number of insured vehicles on Nebraska's highways and streets, for some unexplained reason, the Legislature settled for

§ 60-302 in its present form without any specificity concerning the precise type of "proof of financial responsibility." Because § 60-302 neither includes the specific and stringent requirements of § 60-509 (contents of a policy for the Motor Vehicle Safety Responsibility Act) nor defines what is meant by "a certificate or policy of insurance," § 60-302 produces a public misperception and the mirage of mandatory insurance coverage. In the final analysis, although § 60-302 requires individuals to show proof of financial responsibility to register their motor vehicles, the statute never defines what is meant by "financial responsibility." This legislative deficiency eliminates any basis for ascertaining Nebraska's public policy concerning liability insurance coverage for motor vehicles. Because Nebraska statutes contain no indication that the provisions of the Motor Vehicle Safety Responsibility Act shall apply to all automobile liability policies, nor any instruction regarding the scope of the financial responsibility required by § 60-302, I am unable to find that the household exclusion, unfair as it is, violates Nebraska's public policy. As one court has noted, " ' "it is the duty of the Legislature to make laws and of the court to expound them, . . . the subjects in which the court undertakes to make the law by mere declaration (of public policy) should not be increased in number without the clearest reasons and the most pressing necessity." ' " *Estep v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 105, 112, 703 P.2d 882, 889 (1985) (Stowers, J., dissenting) (quoting *State v. Lavender*, 69 N.M. 220, 365 P.2d 652 (1961)). In the absence of a legislatively expressed public policy for liability insurance coverage, what might violate public policy remains an open question. For that reason, I concur with the majority.

What is all too obvious is that the various Nebraska statutes on liability insurance coverage for motor vehicles are a series of intermittent skin grafts on an amorphous body of law with the anatomical deficiency of no backbone: Nebraska law contains no specifications concerning the particular insurance coverage that provides "financial responsibility." It is a fact of life in the insurance industry that individuals have little, if any, leverage when purchasing insurance policies. Therefore, if the Legislature believes that the welfare of Nebraska's citizens

requires that all persons operating or riding in automobiles in this state be protected by liability insurance in case of a motor vehicle accident, the Legislature must statutorily express that belief as public policy in Nebraska.

WHITE, FAHRNBRUCH, and LANPHIER, JJ., join in this concurrence.