CHARLES SMITH, APPELLEE, V. FETTIN ROOFING CO., INC., A NEBRASKA CORPORATION, ET AL., APPELLANTS.

328 N.W.2d 470

Filed December 30, 1982. No. 43755.

Edward F. Carter, Jr., and Barney, Carter & Johnson, P.C., for appellants.

John McArthur and A. James McArthur, for appellee.

BOSLAUGH, MCCOWN, and CLINTON, JJ., and BRODKEY, J., Retired, and DEBACKER, D.J.

PER CURIAM.

This case arises out of a controversy concerning a written contract between the plaintiff, Charles Smith, and the defendant, Fettin Roofing Co., Inc. The contract provided for the repurchase of capital stock of the corporation by the corporation upon the termination of the employment of the plaintiff by the defendant.

The contract, termed an "Employment Agreement," was signed on July 28, 1974. It was executed on behalf of the corporation by Ralph Greb and Marvin G. Hahn, the sole stockholders of the corporation at that time. The contract provided generally that the plaintiff would be employed by the defendant as a roofer. It further provided: "6. During the term of this agreement Employee shall have the option to purchase the same amount of stock in Company as the present two owners own at the time Employee exercises such option priced at the book value at the time the option is exercised. At the time Employee exercises such option the Company will, at its own expense and within forty-five (45) days provide an audit of Company's books to determine the book value of its stock. That if Employee leaves Company, Company will repurchase said stock owned by Employee for the book value at the date of the termination of his employment. At such time Company will provide an audit to determine the book value of such stock."

Approximately 6 months after the date of the employment contract the plaintiff decided to purchase stock in the corporation. It was agreed between the plaintiff, Greb, and Hahn that the plaintiff would purchase 1,045 shares at $14.40 per share at that time. The plaintiff paid $14,000 in cash and was given a credit of $1,048 by the corporation, which was supposed to represent a one-third share of the

profits for 4 months. A memorandum signed by Greb and Hahn at that time, dated "2-10-75," provided: "Freeze Shares @ 14.40 for Smitty to by [sic] 455 Shares at the end of 1977 from His profits out of Company or from his on persenal [sic] Money." The plaintiff purchased the remaining 455 shares of stock in 1976 and paid $6,480 in cash to the corporation. The plaintiff, Greb, and Hahn then owned equal amounts of stock in the defendant corporation.

In 1976 Hahn withdrew from the corporation. Hahn's stock was purchased by the corporation for $44,295 and is now held as treasury stock.

In 1977 a controversy developed between Greb and the plaintiff over the plaintiff's work performance on some of the jobs. On April 13, 1977, Greb, as president of the corporation, wrote to the plaintiff requesting immediate termination of his employment and the keys to all of the premises and equipment of the company. Three or four days later, the plaintiff wrote a note to Greb stating: "Ralph, here is your keys. About your letter I going to go through with it. Smitty."

The principal issue in this case is the determination of the "book value" of the plaintiff's stock in the corporation at the time his employment was terminated. The contract provided that the defendant at such time "will provide an audit to determine the book value of such stock."

There is no substantial dispute between the parties as to the meaning of the term "book value." Generally, "book value" of the stock in a corporation means the figure obtained by dividing the difference between assets and liabilities by the number of outstanding shares of stock. See, 18 Am. Jur. 2d *Corporations* § 219 (1965); Annot., 51 A.L.R.2d 606 (1957). There is, however, a substantial dispute in this case as to how it should be computed.

It is undisputed that the defendant did not provide an audit to determine the book value of the plain-

tiff's stock. The plaintiff was provided with a balance sheet prepared by Clarence C. Knosp. Knosp was an employee of American Stores Packing Company, but also practiced public accounting. He had done accounting work for the defendant since 1971 or 1972.

The balance sheet prepared by Knosp showed the book value of the stockholders' equity to be $49,691.69 as of April 30, 1977.

The plaintiff employed Gerald S. Grant, a certified public accountant, to examine the records of the defendant and determine the book value of the stock as of April 30, 1977. Grant testified that his examination of the records of the defendant was in the nature of a "limited examination" rather than an audit because there were certain items, such as inventory, that could not be independently verified by him as of April 30, 1977. A bank reconciliation was made, and accounts payable and accounts receivable were verified. Grant was unable to determine original cost of equipment or satisfy himself as to the original issuance of capital stock. The examination which he made, to the extent it was made, was made in accordance with generally accepted auditing standards.

The balance sheet prepared by Grant showed the book value of the stockholders' equity as of April 30, 1977, to be $100,972.

The difference between the values established by Knosp and Grant is over $50,000. It is impossible to reconcile all of the differences between the two balance sheets, but the major differences are explained in the testimony.

Grant discovered an error in accounts receivable that defendant concedes increased assets by approximately $11,400. Grant included $7,267 for work in progress. Knosp claimed there were no unbilled accounts receivable. Grant included $37,268 for "Income Taxes Refundable," due to the net operating loss of the defendant amounting to approxi-

mately $97,000 for the first 4 months of 1977. Grant explained that if the books were closed as of April 30, 1977, such an item should be included to correctly reflect the income tax liability status of the corporation as of that date. Since the business of the defendant is seasonal in nature, the income received in the profitable months during the balance of the year offset the loss during the first 4 months and resulted in a small profit being realized for the entire year. The plaintiff, however, was entitled to the benefit of the potential income tax credit as of April 30, 1977, because the operating loss was deducted from surplus or undistributed profits accumulated in prior years in computing book value.

The trial court found that the book value of the plaintiff's stock was $51,073.34 and that the plaintiff should recover prejudgment interest on that amount from April 30, 1977. In addition to that amount, the trial court found that the plaintiff should recover $4,011.85 for accounting expense.

Upon review de novo we determine that the book value of the plaintiff's stock as of April 30, 1977, was $50,486, and the plaintiff is entitled to recover that amount from the defendant. We find that the plaintiff is not entitled to prejudgment interest because the amount due the plaintiff was not ''determined or readily determinable by computation.'' It was not liquidated because the amount due could not be determined from data without reliance upon opinion or discretion. See *Estate of Ruwe v. Ruwe,* 190 Neb. 663, 211 N.W.2d 610 (1973).

The plaintiff is entitled to recover the $4,011.85 accounting expense he incurred because it was the obligation of the defendant to furnish the audit. The defendant is not entitled to a credit for one-half of the expense of the audit, as claimed by the defendant, because it was the obligation of the company to furnish the audit.

The judgment of the District Court is modified to provide that the plaintiff shall recover $50,486 with-

out prejudgment interest as the book value of his stock; and as so modified it is affirmed.

AFFIRMED AS MODIFIED.

CLINTON, J., not participating.