KEVIN M. JONES AND AMERICAN FAMILY MUTUAL INSURANCE COMPANY, A WISCONSIN CORPORATION, APPELLANTS, V. SHELTER MUTUAL INSURANCE COMPANIES, APPELLEE.

738 N.W.2d 840

Filed August 24, 2007.    No. S-06-310.

Eugene L. Hillman and Patricia McCormack, of Hillman, Forman, Nelsen, Childers & McCormack, for appellants.

Susan Kubert Sapp and Laura R. Hegge, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee.

HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

STEPHAN, J.

This appeal requires us to determine whether an insurer's definition of "use" of a motor vehicle as "operation and maintenance" violates Nebraska public policy applicable to uninsured motorist insurance. We conclude that it does not.

## FACTS

This case was tried to the district court on stipulated facts. On December 30, 2003, Kevin M. Jones was a front seat passenger in an automobile driven by Amanda Stastny. The automobile was struck by an uninsured motorist in Omaha, Douglas County, Nebraska. The uninsured motorist was legally liable for the accident.

At the time of the accident, Shelter Mutual Insurance Companies (Shelter) had in effect a policy of automobile insurance issued to Stastny which insured her automobile. The policy included uninsured motorist coverage. On the same date, American Family Mutual Insurance Company (American Family) had in force an automobile liability insurance policy issued to Jones' parents, under which Jones was an additional insured for purposes of uninsured motorist coverage. Both Stastny and Jones made claims for uninsured motorist benefits under the Shelter policy, and Jones made a claim for uninsured motorist benefits under the American Family policy. Shelter paid $25,000 in benefits to Stastny, but denied benefits to Jones. American Family paid Jones $60,000 of its $100,000 policy limit, and he executed a release and assignment of any rights he had against Shelter in favor of American Family.

Jones and American Family brought this action to recover uninsured motorist benefits under the Shelter policy. The policy provided for uninsured motorist benefits in the amount of $50,000 per person or $100,000 per accident. It contained a provision limiting uninsured benefits for non-named insureds to the minimum limits required by law, which in Nebraska is $25,000 per person.[1] The Shelter policy provided in relevant part:

---

[1] See Neb. Rev. Stat. § 44-6408(1)(a) (Reissue 2004).

## PART I — AUTO LIABILITY
### COVERAGE A — **BODILY INJURY** LIABILITY;
### COVERAGE B — **PROPERTY DAMAGE** LIABILITY
### ADDITIONAL DEFINITIONS USED IN PART I

As used in this Part, **insured** means:

(1) **You**, with respect to **your ownership** or **use** of the **described auto** and **your use** of a **non-owned auto**;

(2) any **relative**, with respect to his or her **use** of the **described auto** or a **non-owned auto**;

(3) any **individual** who is:

(a) related to **you** by blood, marriage, or adoption, who is primarily a resident of, and actually living in, **your** household, including **your** unmarried and unemancipated child away at school; or

(b) a foster child in **your** legal custody for more than ninety consecutive days immediately prior to the **accident**; but only with respect to that **individual's use** of the **described auto**;

(4) any **individual** listed in the Declarations as an "additional listed insured," but only with respect to that **individual's use** of the **described auto**; and

(5) any **individual** who has **permission** or **general consent** to **use** the **described auto**. However, the limits of **our** liability for **individuals** who become **insureds** solely because of this subparagraph, will be the minimum limits of liability insurance coverage specified by the **financial responsibility law** applicable to the **accident**, regardless of the limits stated in the Declarations.

. . . .

## PART IV — UNINSURED MOTORISTS
### COVERAGE E — UNINSURED MOTORISTS
### ADDITIONAL DEFINITIONS USED IN PART IV

As used in this Part:

. . . .

(2) **Insured** means:

(a) **You**;

(b) any **relative**;

(c) any **individual** who is:

(i) related to **you** by blood, marriage, or adoption, who is primarily a resident of, and actually living in, **your** household, including **your** unmarried and unemancipated child away at school; or

(ii) a foster child in **your** legal custody for more than ninety consecutive days immediately prior to the **accident**; but only when that **individual** is **occupying** the **described auto**;

(d) any **individual** listed in the Declarations as an "additional listed insured," but only when that **individual** is **occupying** the **described auto**; and

(e) any **individual** who has **permission** or **general consent** to **use** the **described auto** but only when that **individual** is **using** the **described auto**. However, the limit of **our** liability for **individuals** who become **insureds** solely because of this subparagraph, will be the minimum limits of uninsured motorist insurance coverage specified by the **uninsured motorist law** or **financial responsibility law** applicable to the **accident**, regardless of the limit stated in the Declarations.

The "**DEFINITIONS**" section of the Shelter policy, applicable to all sections of the policy, defined "**Use**" to mean "**operation** and **maintenance**," "**Occupy**" to mean "being in physical contact with a vehicle while in it, getting into it, or getting out of it," and "**Operate**" to mean "physically controlling, having physically controlled, or attempting to physically control, the movements of a vehicle." It is undisputed that Jones was not a relative of Stastny and was not a named insured or an additional insured on the Shelter policy. Jones also was not the operator of the automobile at the time of the accident, nor was he performing maintenance on the vehicle.

American Family and Shelter filed motions for summary judgment. The district court granted Shelter's motion, finding that Jones was not an insured under the Shelter policy and therefore was not entitled to uninsured motorist benefits. The district court also determined that notwithstanding this fact, the American Family policy was Jones' primary source of uninsured motorist benefits and that he had not exhausted this

coverage prior to asserting his claim against Shelter. The court concluded that "the Shelter . . . policy denying uninsured motorist coverage to Jones under the circumstances is not contrary to Nebraska law."

Jones and American Family (hereinafter collectively appellants) filed this timely appeal. We granted their petition to bypass the Court of Appeals.[2]

## ASSIGNMENTS OF ERROR

Appellants assign, restated and consolidated, that the district court erred in (1) failing to find that language in the Shelter policy violates Nebraska public policy and the Nebraska uninsured motorist statutes, (2) failing to find that the Shelter policy provides uninsured motorist coverage for Jones, and (3) finding that American Family was the primary uninsured motorist carrier.

## STANDARD OF REVIEW

The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the trial court.[3] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[4]

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[5] When adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those

---

[2] See Neb. Rev. Stat. § 24-1106(2) (Reissue 1995).

[3] *Lovette v. Stonebridge Life Ins. Co.*, 272 Neb. 1, 716 N.W.2d 743 (2006); *Dutton-Lainson Co. v. Continental Ins. Co.*, 271 Neb. 810, 716 N.W.2d 87 (2006).

[4] *Livengood v. Nebraska State Patrol Ret. Sys.*, 273 Neb. 247, 729 N.W.2d 55 (2007).

[5] *Johnson v. Knox Cty. Partnership*, 273 Neb. 123, 728 N.W.2d 101 (2007).

motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as the court deems just.[6]

## ANALYSIS

We begin from a point of consensus. The district court determined that Jones was not an "insured" as defined in the Shelter policy. Appellants and Shelter agree with that reading of the policy. The question presented is whether the Shelter policy provision defining "use" to include only "operation and maintenance" of the vehicle is contrary to the public policy embodied in the Uninsured and Underinsured Motorist Insurance Coverage Act,[7] the purpose of which is "to give the same protection to a person injured by an uninsured or underinsured motorist as the person would have if he or she had been injured in an accident caused by an automobile covered by a standard liability policy."[8] The provisions of the act are to be liberally construed to accomplish such purpose.[9]

The act requires in relevant part:

No policy insuring against liability imposed by law for bodily injury . . . suffered by a natural person arising out of the *ownership, operation, maintenance, or use* of a motor vehicle within the United States . . . shall be delivered, issued for delivery, or renewed with respect to any motor vehicle principally garaged in this state unless coverage is provided for the protection of *persons insured* who are legally entitled to recover compensatory damages for bodily injury . . . from (a) the owner or operator of an uninsured motor vehicle . . . .[10]

Appellants contend that this statute "specifies the circumstances under which uninsured coverage must be provided" and that

---

[6] *Id.*

[7] Neb. Rev. Stat. §§ 44-6401 to 44-6414 (Reissue 2004).

[8] See *Allied Mut. Ins. Co. v. Action Elec. Co.*, 256 Neb. 691, 697, 593 N.W.2d 275, 279 (1999).

[9] *Id.*

[10] § 44-6408(1) (emphasis supplied).

those circumstances include "when bodily injury results from the 'ownership, operation, maintenance, or use of a motor vehicle.'"[11] They argue that the statute clearly requires that "ownership," "operation," "maintenance," and "use" must have separate definitions and meaning and that Shelter's policy fails to carry out this statutory intent because it equates "use" with "operation and maintenance" in its definitions.[12]

Our case law recognizes that in the context of motor vehicle insurance, the term "use" may have a broader meaning than "operation," especially when applied to passengers.[13] However, the fact that we have held in past cases that a passenger is "using" a motor vehicle for purposes of a motor vehicle insurance policy is not determinative here, because there is no indication in those cases that the policies included the restrictive definition of "use" found in the Shelter policy.[14]

In *Allied Mut. Ins. Co.*,[15] we held that the phrase "persons insured" as used in § 44-6408 means "those persons insured under the liability provisions of a motor vehicle policy." Because the liability coverage of the policy at issue in that case insured persons "using" the vehicle, we held that the insurer could not limit underinsured motorist coverage "to the smaller class of persons 'occupying' the vehicle."[16]

■ Unlike the policy at issue in *Allied Mut. Ins. Co.*, the Shelter policy before us defines "insured" in substantially the same way under its liability and uninsured motorist coverages. Although both provide coverage for persons using the vehicle

---

[11] Brief for appellants at 15.

[12] See *Zach v. Nebraska State Patrol*, 273 Neb. 1, 727 N.W.2d 206 (2007) (holding court must attempt to give effect to all parts of statute, and no word, clause, or sentence will be rejected as superfluous or meaningless).

[13] See, *Allied Mut. Ins. Co. v. Action Elec. Co., supra* note 8; *National Union Fire Ins. Co. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 (1966); *Metcalf v. Hartford Acc. & Ind. Co.*, 176 Neb. 468, 126 N.W.2d 471 (1964).

[14] See *id.*

[15] *Allied Mut. Ins. Co. v. Action Elec. Co., supra* note 8, 256 Neb. at 699, 593 N.W.2d at 280.

[16] *Id.*

with the permission of the named insured, "use" is narrowly defined to include only "operation and maintenance." Thus, a passenger is not an "insured," as defined by the policy, under either its liability or its uninsured motorist insurance provisions. An insurance policy is a contract between an insurance company and an insured, and as such, the insurance company has the right to limit its liability by including limitations in the policy definitions.[17] If the definitions in the policy are clearly stated and unambiguous, the insurance company is entitled to have such terms enforced.[18]

Appellants argue that Shelter's definition is contrary to the language of § 44-6408. Clearly, however, § 44-6408 relates specifically to uninsured and underinsured motorist coverage and does not dictate who must be insured under the *liability* coverage of a policy. The phrase "ownership, operation, maintenance, or use" in § 44-6408 simply describes the type of liability coverage a policy *may* offer. As we held in *Allied Mut. Ins. Co.*, the statute then requires that any person or class of persons insured under that liability coverage must also be insured under the uninsured motorist coverage. Here, Shelter has chosen to limit both its liability and uninsured coverage for a person "using" the vehicle with the consent of the insured to those circumstances in which the use involves the operation and maintenance of the vehicle. Such limitation does not violate the public policy expressed in § 44-6408.

As an alternative basis for its ruling in favor of Shelter, the district court determined that the American Family policy was Jones' "primary source of benefits under the circumstances" and that Jones' failure to exhaust such benefits barred any claim against Shelter.

Section 44-6411 provides:

(1) In the event an insured *is entitled to uninsured or underinsured motorist coverage under more than one policy of motor vehicle liability insurance*, the maximum

---

[17] *Hillabrand v. American Fam. Mut. Ins. Co.*, 271 Neb. 585, 713 N.W.2d 494 (2006).

[18] *Id.*

amount an insured may recover shall not exceed the highest limit of any one such policy.

(2) In the event of bodily injury, sickness, disease, or death of an insured while occupying a motor vehicle not owned by the insured, payment shall be made in the following order of priority, subject to the limitations in subsection (1) of this section: (a) The uninsured or underinsured motorist coverage on the occupied motor vehicle is primary; and (b) if such primary coverage is exhausted, other uninsured or underinsured motorist coverage available to the insured is excess.

(3) *When multiple policies apply, payment shall be made in the following order of priority,* subject to the limit of liability for each applicable policy:

(a) A policy covering a motor vehicle occupied by the injured person at the time of the accident;

. . . .

(c) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

(Emphasis supplied.) Jones was not an insured under the Shelter policy insuring the vehicle in which he was an occupant at the time of his injury. Accordingly, under § 44-6411, he was not "entitled" to benefits under more than one policy, nor do "multiple policies" apply to him. The district court correctly found that the priority-of-payment provisions in § 44-6411 were not applicable and that the American Family policy is the primary policy under the circumstances of this case.

## CONCLUSION

For the reasons discussed, Shelter's definition of "use" to include only "operation and maintenance" does not violate the public policy embodied in § 44-6408. Because Jones was not an insured under the uninsured motorist coverage afforded by the Shelter policy, the priority-of-payment provisions in § 44-6411 are inapplicable to him. We affirm the judgment of the district court.

AFFIRMED.

WRIGHT and McCORMACK, JJ., not participating.

GERRARD, J., concurring.

I agree with the majority opinion that Shelter's definition of "use" as "operation and maintenance" does not violate existing Nebraska public policy applicable to uninsured motorist insurance. While Shelter's definition of use does not expressly violate the current public policy (such as it is) embodied in Neb. Rev. Stat. § 44-6408 (Reissue 2004), Shelter's insurance policy has exposed a loophole in Nebraska law that, until closed by the Legislature, will leave many Nebraskans at the mercy of uninsured motorists.

The problem is created by Nebraska's omnibus statute for motor vehicle insurance, which does not provide the same protection that is provided to motorists in nearly every other state. Like most states, Nebraska requires motor vehicles to be covered by some form of financial security, usually liability insurance.[1] And like most states, Nebraska has a statute specifying the coverage necessary to meet that requirement.[2]

But in most states, the omnibus statute sets minimum standards for both the amount of coverage and the scope of that coverage.[3] In other words, the policy must provide coverage up to a monetary limit, must cover a certain range of injuries, and most pertinent to this case, must include particular people as "insured."[4] In nearly every state, an omnibus statute requires a policy to insure any motor vehicle owned by the insured *and* any other person using that vehicle with permission of the insured against loss from liability for damages "arising out of the ownership, maintenance, or use" of the vehicle.[5] In a few other states,

---

[1] See Neb. Rev. Stat. § 60-387 (Cum. Supp. 2006).

[2] See Neb. Rev. Stat. § 60-310 (Cum. Supp. 2006).

[3] See, generally, 8 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 111:22 (2004); 1 Irvin E. Schermer and William J. Schermer, Automobile Liability Insurance § 3:9 (4th ed. 2004).

[4] See *id.*

[5] See *id.* See, e.g., Alaska Stat. § 28.22.101 (2004); Ariz. Rev. Stat. Ann. § 28-4009 (2004); Cal. Ins. Code § 11580.1 (West Cum. Supp. 2007); Colo. Rev. Stat. Ann. § 10-4-620 (West 2006); Conn. Gen. Stat. Ann. § 38a-335 (West 2000); Del. Code Ann. tit. 21, § 2118(a) (2005); Fla. Stat. Ann. § 627.736(1) (West Cum. Supp. 2007); Haw. Rev. Stat. § 431:10C-301(b)

statutes more specifically address whether liability coverage must extend to passengers and who must be provided with uninsured motorist protection.[6] Florida, for example, has specified in commendable detail the coverage that compulsory automobile liability insurance should provide, including coverage for passengers and permissive users and the particular benefits to which an insured is minimally entitled.[7]

By contrast, Nebraska's omnibus statute, § 60-310, only establishes monetary limits for a policy. It does not require a motorist's liability insurance to cover any particular range of persons or injuries. Nebraska's insurance requirement can be satisfied by evidence of an "automobile liability policy," which only requires insurance "protecting other persons from

---

(2005); Idaho Code Ann. § 49-1212 (Cum. Supp. 2007); Ind. Code Ann. § 9-25-2-3 (LexisNexis 2004); Iowa Code Ann. § 321.1(24B) (West Cum. Supp. 2007); Kan. Stat. Ann. § 40-3107 (2001); Ky. Rev. Stat. Ann. § 304.39-020 (LexisNexis 2006); La. Rev. Stat. Ann. § 32:900(B)(2) (Cum. Supp. 2007); Me. Rev. Stat. Ann. tit. 29-A, § 1605 (1996 & Cum. Supp. 2004); Mass. Gen. Laws Ann. ch. 90, § 34A (West 2001); Mich. Comp. Laws Ann. § 500.3101 et seq. (West 2002 & Cum. Supp. 2007); Minn. Stat. Ann. § 65B.49 (West Cum. Supp. 2007); Miss. Code Ann. § 63-15-3(j) (Cum. Supp. 2006); Mo. Ann. Stat. § 303.190 (West 2003); Mont. Code Ann. § 61-6-103 (2005); Nev. Rev. Stat. § 485.3091 (2005); N.H. Rev. Stat. Ann. § 259:61 (Cum. Supp. 2006); N.J. Stat. Ann. § 39:6B-1 (West Cum. Supp. 2007); N.M. Stat. § 66-5-205.3 (2006); N.Y. Veh. & Traf. Law § 311 (McKinney 2005); N.C. Gen. Stat. § 20-279.21 (2005); N.D. Cent. Code § 39-16.1-11 (Supp. 2007); Ohio Rev. Code Ann. § 4509.01(K) (LexisNexis 2003); Okla. Stat. Ann. tit. 47, § 7-600 (West 2007); Or. Rev. Stat. § 806.080 (2005); 75 Pa. Cons. Stat. Ann. § 1702 (West 2006); R.I. Gen. Laws § 31-47-2 (2002); S.C. Code Ann. § 38-77-140 et seq. (Cum. Supp. 2006); S.D. Codified Laws § 32-35-70 (2004); Tenn. Code Ann. §§ 55-12-102 and 55-12-122 (2004); Tex. Transp. Code Ann. § 601.071 et seq. (Vernon 1999); Utah Code Ann. §§ 31A-22-303 and 31A-22-304 (2005); Va. Code Ann. § 46.2-472 (2005); W. Va. Code Ann. § 17D-4-2 (LexisNexis 2004); Wyo. Stat. Ann. § 31-9-405 (2007).

[6] See, e.g., Ga. Code Ann. § 33-7-11 (Supp. 2006) (uninsured motorist coverage for permissive users); Md. Code Ann. Ins. § 19-505 (LexisNexis Supp. 2006); Md. Code Ann. Transp. § 17-103 (LexisNexis 2006) (specifying coverage for permissive users); Wis. Stat. Ann. § 632.32 (West 2004) (uninsured motorist coverage for permissive users; no passenger exclusions).

[7] See Fla. Stat. Ann. § 627.736(1).

damages for liability on account of accidents" in the amount of $25,000 or $50,000, depending on the injury.[8] Because Nebraska's peculiar omnibus statute does not specify the scope of insurance coverage Nebraska motorists must carry, Shelter was left free to define "use" in a way that is inconsistent with the well-established meaning of the word and in a way that would not have met the minimum standards required nearly everywhere else.

Nebraska law does require that policies certified as "proof of financial responsibility" insure the named insured and permissive users "against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle."[9] But that statute only extends to policies intended to provide the "proof of financial responsibility" that must be filed by persons subject to the Motor Vehicle Safety Responsibility Act,[10] whose licenses have been suspended or revoked for reasons such as an unsecured accident, an unsatisfied judgment, or a criminal conviction. It does not apply to policies not certified for that purpose,[11] and Nebraska's compulsory financial responsibility law can be satisfied by *either* "proof of financial responsibility" *or* the lesser showing of "evidence of insurance" explained above.[12] When the Legislature passed 1995 Neb. Laws, L.B. 37, enacting the predecessor to § 60-310, it may have intended to require the same insurance coverage for all motorists. But the statutes as currently written do not accomplish that.

It is clear from the record in this case that Shelter's policy was intended to comply with Nebraska's compulsory insurance statutes. If Nebraska had an omnibus statute imposing the

---

[8] See § 60-310.

[9] See Neb. Rev. Stat. § 60-534 (Reissue 2004). See, also, Neb. Rev. Stat. § 60-346 (Cum. Supp. 2006).

[10] Neb. Rev. Stat. ch. 60, art. 5 (Reissue 2004 & Cum. Supp. 2006).

[11] See, *State Farm Mut. Auto. Ins. Co. v. Hildebrand*, 243 Neb. 743, 502 N.W.2d 469 (1993); *State Farm Mut. Auto. Ins. Co. v. Pierce*, 182 Neb. 805, 157 N.W.2d 399 (1968).

[12] See § 60-387.

requirements found to be minimally acceptable in nearly every other state, Jones, as a passenger, would have been engaged in permissive "use" of the vehicle within the well-established meaning of the word and would have been an "insured" for purposes of uninsured motorist coverage.[13] The result in this case is a direct consequence of that defect in Nebraska's motor vehicle liability insurance statutes.

Fourteen years ago, several members of this court characterized Nebraska statutes on liability insurance coverage for motor vehicles as "a series of intermittent skin grafts on an amorphous body of law with the anatomical deficiency of no backbone," concluding that the deficiencies in the statutes "produc[ed] a public misperception and the mirage of mandatory insurance coverage."[14] While the situation now is not as unfortunate as it was then, unless there is further improvement, Nebraska's omnibus statute cannot achieve its remedial purpose of protecting the public.[15] And the Uninsured and Underinsured Motorist Insurance Coverage Act[16] will not serve its purpose of protecting the public from negligent, financially irresponsible motorists[17] so long as innocent passengers can be effectively excluded from its benefits.

It is a fact of life in the insurance industry that consumers have little if any leverage when purchasing insurance policies[18] and that consumers unaware of or unschooled in the vagaries of insurance contracts may be misled into believing they have purchased coverage when in reality they have not.[19] It is for

---

[13] See *Protective Fire & Cas. Co. v. Cornelius*, 176 Neb. 75, 125 N.W.2d 179 (1963).

[14] *Hildebrand, supra* note 11, 243 Neb. at 757, 502 N.W.2d at 477 (Shanahan, J., concurring; White, Fahrnbruch, and Lanphier, JJ., join).

[15] See *Cornelius, supra* note 13.

[16] Neb. Rev. Stat. § 44-6401 et seq. (Reissue 2004).

[17] *Continental Western Ins. Co. v. Conn*, 262 Neb. 147, 629 N.W.2d 494 (2001).

[18] See *Hildebrand, supra* note 11 (Shanahan, J., concurring).

[19] See *Allied Mut. Ins. Co. v. Action Elec. Co.*, 256 Neb. 691, 593 N.W.2d 275 (1999).

these reasons that the legislatures in nearly every state have enacted statutory schemes that serve the purpose of providing compensation for innocent victims of automobile accidents and protecting named insureds, permittees, and injured persons.[20] Nebraska's Legislature would be well advised to follow their example. For the moment, however, I am constrained to concur in the properly reasoned judgment of the court.

HEAVICAN, C.J., joins in this concurrence.

---

[20] See 8 Russ & Segalla, *supra* note 3.