Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/09/2022 09:06 AM CDT

In re Estate of Steven G. Clark, deceased.
Clark Grain Company, a Nebraska corporation,
and Brian D. Clark, appellants and
cross-appellees, v. Jelayne Clark,
appellee and cross-appellant.

___ N.W.2d ___

Filed August 9, 2022.    No. A-21-803.

1. **Contracts.** The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review.
2. **Jurisdiction: Appeal and Error.** It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.
3. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.
4. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered.
5. **Decedents' Estates.** A proceeding under the Nebraska Probate Code is a special proceeding.
6. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.
7. ____: ____. A substantial right is not affected when that right can be effectively vindicated in an appeal from the final judgment.

8. **Contracts.** A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.

9. \_\_\_\_. The fact that the parties have suggested opposite meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.

10. \_\_\_\_. A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include.

11. \_\_\_\_. Extrinsic evidence is not permitted to explain the terms of a contract that is unambiguous.

12. \_\_\_\_. A latent ambiguity exists when collateral facts make the meaning of the contract uncertain.

13. \_\_\_\_. A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract.

14. \_\_\_\_. A contract is viewed as a whole in order to construe it.

15. \_\_\_\_. Whatever the construction of a particular clause of a contract, standing alone, may be, it must be read in connection with other clauses.

Appeal from the County Court for Nemaha County: CURTIS L. MASCHMAN, Judge. Reversed and remanded with directions.

Louie M. Ligouri, of Ligouri Law Office, for appellants.

Charles M. Bressman, Jr., of Bressman, Hoffman & Jacobs, for appellee.

MOORE, RIEDMANN, and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Brian D. Clark and Clark Grain Company (the Company) appeal, and Jelayne Clark cross-appeals, the order of the county court for Nemaha County which determined that a term defined in a contract was ambiguous and, therefore, utilized extrinsic evidence to ascertain the intent of the parties. We conclude that the court erred in finding ambiguity in the contract and reverse the court's order and remand the cause with directions.

## BACKGROUND

The Company is a closely held Nebraska corporation. Its four shareholders were Steven G. Clark; his brother, Brian; and their parents, William Clark and Marilyn Clark. In January 2005, the shareholders entered into a Restricted Stock Purchase Agreement (RSPA). The RSPA provided that in the event of the death of Steven or Brian, the Company had "the right to purchase the deceased's shares of stock from his estate at fair market value." Paragraph 3 of the RSPA further provided, "'Fair market value' for the stock shall be determined by the amount of the previous year-end corporate balance sheet, wherein assets, less liabilities, divided by the number of outstanding shares of stock shall be the value."

Steven died in July 2017. In August, his widow, Jelayne, filed an application for informal appointment of personal representative in intestacy. Within the action, the Company and its shareholders filed a petition to adjudicate and settle stock shares. They asked that pursuant to the RSPA, the county court value Steven's shares of stock according to the formula set forth in the RSPA and facilitate the right granted to the Company to purchase his shares.

Jelayne filed an answer, alleging that the formula provided in the RSPA for calculating the value of Steven's shares was ambiguous and asking the court to hold a hearing at which the parties could provide evidence of the fair market value of the stock, including the opinions of her expert witness. The Company and its shareholders responded, objecting to Jelayne's requests to present evidence and asking for an order in limine excluding her expert's opinions. After holding a hearing on the objections and motion in limine, the county court entered an order in April 2018, in which it observed that the RSPA included a definition of fair market value, but found that

> there is a problem with this definition. Although the parties designated this as a definition of [fair market value],

it is essentially the definition of *book value*. If fixed assets make up a significant portion of the balance sheet and they are not periodically revalued to reflect current value they are then "carried at book". A significant appreciation or depreciation would greatly impact the [fair market value] of the assets and thus the share value.

The court therefore concluded that there was a latent ambiguity in the RSPA as to the meaning of the term "fair market value." Accordingly, it held that extrinsic evidence was necessary to resolve the ambiguity as to whether the formula was one for fair market value or book value.

A trial was held in July 2021, and on September 9, the county court entered a written order. After reviewing the evidence presented at trial, the court reaffirmed its previous finding that the RSPA's definition of fair market value was ambiguous because no evidence was presented that would make the RSPA's formula anything other than book value. The court therefore looked to extrinsic evidence of the intent of the parties to resolve the ambiguity.

In reviewing the language of the RSPA and the evidence submitted at trial, the court determined that the primary intent of the RSPA was to provide a fair and straightforward way for the continuation of the Company in the event of the death of Steven or Brian. Of the competing goals of fairness and straightforwardness, the court held that fairness "must be the lodestar." Accordingly, the court utilized the formula set forth in the RSPA, but substituted expert opinion of the fair market value of real estate for the value of certain real estate listed on the balance sheet to reach a total value for Steven's shares of $1,016,853.75. The court required that the Company elect to purchase Steven's shares within 45 days of the date of the order. This appeal followed.

## ASSIGNMENTS OF ERROR

The appellants assign that the county court erred in (1) determining that the RSPA contained a latent ambiguity;

(2) rewriting the RSPA to reflect its view of a fairer bargain; (3) admitting extrinsic evidence to vary, change, add to, and render meaningless terms of the RSPA, including admitting inadmissible opinion evidence; (4) rejecting what the parties to the RSPA intended by their agreement, including the meaning given to the agreement by the parties themselves while engaged in their performance of the agreement before any controversy arose; and (5) failing to consider or account for the discounts for the minority interest and lack of marketability of the shares of stock valued by the court and in totally disregarding the testimony and expert opinions of a certain expert witness. They further assign that the county court's decision is contrary to the evidence and the law and constitutes an abuse of discretion.

On cross-appeal, Jelayne assigns that the county court erred when it did not resolve the ambiguity in the RSPA by utilizing the fair market value established by her experts.

## STANDARD OF REVIEW

[1] The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review. *Bierman v. Benjamin*, 305 Neb. 860, 943 N.W.2d 269 (2020).

## ANALYSIS

Before we reach the merits of the appeal, we pause to address whether the order from which the appeal was taken is a final, appealable order. We asked the parties to address this issue when briefing the case. After our review, we conclude that the September 9, 2021, order is final and appealable, and thus, we have jurisdiction over the appeal.

[2,3] It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012). Generally, for an appellate court to acquire jurisdiction of an

appeal, there must be a final order entered by the court from which the appeal is taken. *Id*.

[4,5] Under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered. *In re Estate of McKillip, supra*. A probate proceeding is a special proceeding. See *id*. Therefore, the question is whether the September 9, 2021, order affected a substantial right.

[6,7] A substantial right under § 25-1902 is an essential legal right. *Western Ethanol Co. v. Midwest Renewable Energy*, 305 Neb. 1, 938 N.W.2d 329 (2020). A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken. *Id*. Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend. *Western Ethanol Co. v. Midwest Renewable Energy, supra*. A substantial right is not affected when that right can be effectively vindicated in an appeal from the final judgment. *In re Estate of Potthoff*, 273 Neb. 828, 733 N.W.2d 860 (2007). As one commentator has observed, in the context of multifaceted special proceedings that are designed to administer the affairs of a person, an order that ends a discrete phase of the proceedings affects a substantial right because it finally resolves the issues raised in that phase. See John P. Lenich, *What's So Special About Special Proceedings? Making Sense of Nebraska's Final Order Statute*, 80 Neb. L. Rev. 239 (2001).

The Nebraska Supreme Court has recognized that "we have decided several cases involving finality in probate orders. In doing so, we have generally noted that a consideration

regarding finality is whether the order ended a discrete—that is, separate and distinct—phase of the proceedings." *In re Estate of Beltran*, 310 Neb. 174, 180, 964 N.W.2d 714, 719 (2021).

In *In re Estate of Rose*, 273 Neb. 490, 730 N.W.2d 391 (2007), a surviving spouse elected to take her elective share of 50 percent of the augmented estate and requested a family allowance. The probate court included certain property in the augmented estate and ordered the personal representative to pay a monthly family allowance, but the court did not make a final determination of the augmented estate. The Supreme Court determined that the probate court's treatment of items relevant to the calculation of the augmented estate could be effectively considered on an appeal from the final establishment of the augmented estate, and it noted that the determinations made by the court were "preliminary to a complete determination of the size of the augmented estate which was the fundamental issue before the county court." *Id.* at 495, 730 N.W.2d at 395. As such, the order appealed from was not final.

Conversely, in *In re Estate of Potthoff, supra*, the Supreme Court found that the probate court's order determining that a decedent's notice of severance of joint tenancy was ineffective and that awarding the wife all of the property as the sole surviving joint property owner was a final order. In reaching its decision, it stated that the order

> resolved the separate issue of whether [the decedent's] interest in the property was part of the probate estate, and following the county court's order, there was nothing left to be determined on that issue. Moreover, unlike *In re Estate of Rose*, the rights involved in this case cannot be effectively considered in an appeal from the final judgment in which the probate estate is finally established. It is not uncommon for the probate of an estate to remain open for years. If that were to be the case here, by the time the probate estate is finally settled, the property in

question may have been disposed of or the value of the property may be substantially reduced.

*In re Estate of Potthoff*, 273 Neb. at 832, 733 N.W.2d at 865.

In the present case, the valuation of the stock does not necessarily create the same risk as did the property in *In re Estate of Potthoff*, because its value is purportedly set by contract based on a prior balance sheet. Regardless, because the Company is not a beneficiary of the estate and its right to purchase Steven's shares is purely contractual, valuing the shares and granting the Company its right to purchase them is a separate issue from the probate of the estate. And the September 9, 2021, order finally resolved the issues raised in that phase and likely resolved any issues involving the Company, leaving solely the distribution of Steven's estate among his wife and children. In that sense, we find it to be a discrete phase of the proceeding. Therefore, the order is a final, appealable order.

We now turn to the errors assigned on appeal. The appellants assign that the county court erred in finding that the RSPA contained a latent ambiguity and in considering extrinsic evidence to ascertain the parties' intent rather than enforcing the RSPA solely according to its terms. Jelayne argues that the appellants are estopped from appealing the issue of ambiguity because they failed to appeal from the April 2018 order in which the county court first determined that an ambiguity existed. We disagree that the April order was an appealable order.

As set forth in our analysis above, the proceeding was a special proceeding, so the question is whether the April 2018 order finding an ambiguity affected a substantial right of the parties. In its determination that an ambiguity existed, the county court did not resolve that ambiguity; rather, it indicated that extrinsic evidence was necessary to resolve the ambiguity as to whether the formula was one for fair market value or book value. Had the appellants appealed following the April order, we would have dismissed the appeal for lack of jurisdiction because no substantial right of the parties had yet been affected.

Turning to the appellants' assignment of error that the county court erred in finding a latent ambiguity and in considering extrinsic evidence rather than enforcing the RSPA solely according to its terms, we agree.

[8-11] A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Benjamin v. Bierman*, 305 Neb. 879, 943 N.W.2d 283 (2020). The fact that the parties have suggested opposite meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Id*. A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include. *Id*. Extrinsic evidence is not permitted to explain the terms of a contract that is unambiguous. *Id*.

[12] A latent ambiguity exists when collateral facts make the meaning of the contract uncertain. *Kluver v. Deaver*, 271 Neb. 595, 714 N.W.2d 1 (2006). For example, the Supreme Court, in a contested will case, explained that if two or more persons satisfy a description of one devisee, there is a latent ambiguity, and extrinsic evidence is admissible to disclose and remove that ambiguity. *Id*. In such a case, extrinsic evidence becomes necessary to properly construe the contract. *Id*.

In the present case, the county court found a latent ambiguity because, although the RSPA defines fair market value, the definition provided was actually the formula for calculating book value. See, also, *Smith v. Fettin Roofing Co.*, 213 Neb. 184, 328 N.W.2d 470 (1982) (generally, book value of stock in corporation means figure obtained by dividing difference between assets and liabilities by number of outstanding shares of stock). According to the county court, fair market value and book value are "radically different concepts, and language defining one as the other leaves an ambiguity." The court therefore concluded that the RSPA was ambiguous because it was unclear whether the parties intended the value of the

shares to be calculated using the commonly understood definition of fair market value or using book value.

We disagree that a latent ambiguity exists here. The RSPA provides a formula for calculating the value of Steven's shares of stock, and there is no dispute as to the resulting value utilizing that formula. In other words, the parties agree that subtracting liabilities from assets using the figures from the Company's previous yearend balance sheet and dividing by the number of outstanding shares of stock results in a total value for Steven's shares of $723,113.10. Even though the RSPA classifies the formula as one for calculating fair market value, which is contrary to the commonly understood definition of that term, we do not find that this discrepancy creates a latent ambiguity. The parties were free to define terms in their agreement, and those terms are to be enforced according to their contractual definitions. See *Fokken v. Steichen*, 274 Neb. 743, 744 N.W.2d 34 (2008) (contracts are to be construed according to sense and meaning of terms which parties have used). See, also, *Jones v. Shelter Mut. Ins. Cos.*, 274 Neb. 186, 738 N.W.2d 840 (2007) (upholding restrictive definition of word contained within contract despite it generally having broader application); *Kingsley Properties v. San Jacinto Title*, 501 S.W.3d 344 (Tex. App. 2016) (when contracting parties set forth their own definitions of terms they employ, courts are not at liberty to disregard these definitions and substitute other meanings); 2 Restatement (Second) Contracts § 201 at 83 (1981) (stating that "[w]here the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning").

Specifically, the Nebraska Supreme Court has held that the term "fair market value" is not a term of art necessitating reliance on factors outside of an agreement. See *Benjamin v. Bierman*, 305 Neb. 879, 943 N.W.2d 283 (2020). There, the Supreme Court held that the plain language of the relevant agreements set forth how fair market value was to be

determined, and as such, the court need not rely on anything further to interpret the agreements' definition of that term. See *id*. Likewise, here, the RSPA defines fair market value, and the definition is written in clear, unambiguous language. How to follow that formula is not in dispute; rather, the parties disagree on whether they are required to follow the formula.

Moreover, the Supreme Court has continuously upheld the freedom of contract right, under which people have the right to enter into binding private agreements with others. See, *State ex rel. Wagner v. United Nat. Ins. Co.*, 277 Neb. 308, 761 N.W.2d 916 (2009); Black's Law Dictionary 807 (11th ed. 2019). And courts construe contracts according to the meaning of the terms the parties have used. See *Gage County v. Employers Mut. Cas. Co.*, 304 Neb. 926, 937 N.W.2d 863 (2020) (refusing to apply definitions from case law to phrase which parties had defined in contract). If the definitions in a contract are clearly stated and unambiguous, the parties are entitled to have such terms enforced. See *Hillabrand v. American Fam. Mut. Ins. Co.*, 271 Neb. 585, 713 N.W.2d 494 (2006).

In the context of an insurance policy, the Supreme Court rejected arguments suggesting that the court apply definitions of the term "professional services" from case law because the parties' contract defined the term, and thus, that definition resolved the case. See *Gage County v. Employers Mut. Cas. Co., supra*. The Supreme Court observed that contracts are to be construed according to the meaning of the terms that the parties have used. *Id*. Applying definitions from case law rather than the definitions the parties used would result in the court rewriting the policies, and the Supreme Court reiterated that it is imperative that the contract made by the parties be respected and that a new contract is not interpolated by construction. *Id*.

Similarly, in *Jones v. Shelter Mut. Ins. Cos.*, 274 Neb. 186, 738 N.W.2d 840 (2007), the Supreme Court considered whether the definition of "use" of a motor vehicle in an insurance policy

violated the public policy embodied in Nebraska statutes. The court recognized that an insurance policy is a contract between an insurance company and an insured, and as such, the insurance company has the right to limit its liability by including limitations in the policy definitions. *Id*. And if the definitions in the policy are clearly stated and unambiguous, the insurance company is entitled to have such terms enforced. *Id*.

The *Jones* court ultimately held that the insurance company had chosen to limit its coverage for a person "using" the vehicle and that such limitation did not violate public policy expressed in Nebraska statutes. Or, as succinctly stated in the concurrence, because of the language of the relevant Nebraska law, the insurance company was left free to define "'use'" in a way that was inconsistent with the well-established meaning of the word and in a way that would not have met the minimum standards required nearly everywhere else. *Id*. at 197, 738 N.W.2d at 848 (Gerrard, J., concurring). Thus, the court was required to apply the definition as set forth in the policy.

In the instant case, although the RSPA's definition of fair market value is inconsistent with the commonly understood definition of the term, the parties were free to agree to a different definition. And because that definition is written in clear and unambiguous language, it is to be enforced. We are less focused on the parties' use of the term "fair market value" than we are on the language of the RSPA as a whole.

[13-15] A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract. *Hearst-Argyle Prop. v. Entrex Comm. Servs.*, 279 Neb. 468, 778 N.W.2d 465 (2010). And a contract is viewed as a whole in order to construe it. *Id*. Whatever the construction of a particular clause of a contract, standing alone, may be, it must be read in connection with other clauses. *Id*.

Reading the RSPA as a whole, we understand that despite the label used, the parties intended that the value of the

decedent's shares be calculated by utilizing the formula provided, completed by using information set forth on the previous yearend balance sheet. Stated differently, we construe the RSPA in its entirety as providing a formula for calculating the price at which the Company may purchase Steven's or Brian's shares of stock in the event of the death of either man. And even though the formula was labeled as a formula for calculating the fair market value, the parties were free to agree to a definition of fair market value, and because that definition is clear and unambiguous, we are required to enforce it as defined by the RSPA. To hold otherwise would require us to disregard paragraph 3 of the RSPA in which the parties agreed to the formula establishing how "[f]air market value" for the stock would be determined.

As such, we disagree with the county court's conclusion that the RSPA contains a latent ambiguity and its use of extrinsic evidence to ascertain the value of Steven's shares. We therefore reverse the court's order and remand the cause with directions for the court to set the value of Steven's shares following the formula in the RSPA for a total value of $723,113.10. Given this conclusion, we need not address the remaining arguments raised on appeal or cross-appeal. See *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018) (appellate court not obligated to engage in analysis not necessary to adjudicate case and controversy before it).

## CONCLUSION

For the foregoing reasons, the decision of the county court is reversed and the cause is remanded with directions.

REVERSED AND REMANDED WITH DIRECTIONS.