745 N.W.2d 574 (2008)
275 Neb. 189
IN RE INTEREST OF MATTHEW P., A Child Under 18 Years of Age.
State of Nebraska, Appellee,
v.
Matthew P., Appellant.
No. S-07-649.
Supreme Court of Nebraska.
February 29, 2008.
Dennis R. Keefe, Lancaster County Public Defender, Sarah P. Newell, for appellant.
Gary Lacey, Lancaster County Attorney, Alicia B. Henderson, on brief, Michelle A. Paxton, for appellee.
HEAVICAN, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*575 STEPHAN, J.
Matthew P. was adjudicated a child within the meaning of Neb.Rev.Stat. § 43-247(2) (Cum.Supp.2006) after the separate juvenile court of Lancaster County found he had committed an act which would constitute the felony offense of escape from official detention under Neb.Rev.Stat. § 28-912(1) (Reissue 1995). Matthew timely appealed his adjudication. We affirm.

FACTS
In a December 1, 2006, dispositional order, the juvenile court committed Matthew to the custody of the Office of Juvenile Services (OJS) for "out of home placement at a group home level of care." Matthew's commitment was the result of a previous law violation. OJS placed him at a Lincoln group home. Matthew absconded from this placement twice within the first month. The group home informed OJS that it could no longer keep Matthew at the facility, and OJS therefore issued a detainer for his apprehension and detention,[1] colloquially referred to as a "parole hold." The detainer requested that the Lancaster County Youth Services Center *576 (LCYSC) hold Matthew until a hearing could be held seeking to transfer him to a higher level of care. The OJS services officer assigned to Matthew described LCYSC as a "detention center," and the record indicates that it is a secure facility.
Matthew was detained at LCYSC on January 25, 2007. On February 2, a private transport service coordinated and paid for by OJS brought Matthew to a medical appointment in Lincoln. Matthew was transported to the appointment in restraints consisting of "leg irons and handcuffs with a belt." After the appointment, he ran away from the transport employee and was not apprehended until 2 or 3 weeks later.
The State filed a second supplemental petition in the pending juvenile proceeding alleging that Matthew was a minor as defined by § 43-247(2) by reason of his actions on February 2, 2007. The State alleged that Matthew had escaped from official detention in violation of § 28-912(1). After an evidentiary hearing, the juvenile court found that Matthew's actions constituted an escape as defined and contemplated by § 28-912(1). Matthew timely appealed this adjudication, and we moved the appeal to our docket on our own motion under our statutory authority to regulate the dockets of the appellate courts of this state.[2]

ASSIGNMENT OF ERROR
Matthew's sole assignment of error is that the juvenile court erred in adjudicating him because he did not escape from official detention within the meaning of § 28-912(1).

STANDARD OF REVIEW
[1] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[3]

ANALYSIS
[2] Matthew was adjudicated under § 43-247(2), which gives the juvenile court jurisdiction over "[a]ny juvenile who has committed an act which would constitute a felony under the laws of this state." The State alleged that his actions were in violation of § 28-912(1), which provides:
A person commits escape if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period. Official detention shall mean arrest, detention in or transportation to any facility for custody of persons under charge or conviction of crime or contempt or for persons alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but official detention does not include supervision of probation or parole or constraint incidental to release on bail.
This appeal turns on the question of whether Matthew was in "official detention" at the time he eluded the transport employee. We note that although the detainer for apprehension and detention issued by OJS is colloquially referred to as a "parole hold," Matthew was not on parole within the meaning of the Office of Juvenile Services Act, which defines "parole" as "a conditional release of a juvenile from a youth rehabilitation and treatment center to aftercare or transferred to Nebraska for parole supervision by way of *577 interstate compact."[4] Accordingly, the last clause of § 28-912(1) does not apply.
[3] In determining whether Matthew was under "official detention" as defined by § 28-912(1), we are guided by the familiar principle that statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[5] The statutory definition of "official detention" is broad and encompasses a variety of circumstances. In this case, the relevant language in § 28-912(1) is "detention in or transportation to any facility ... for persons alleged or found to be delinquent ... or any other detention for law enforcement purposes."
On the date in question, Matthew was under the jurisdiction of the juvenile court as a result of his previous adjudication for committing an act which would constitute a law violation. He was committed to OJS, which is charged with oversight and control of certain state juvenile correctional facilities and programs.[6] At the time of his flight, he was placed at a juvenile detention facility and was in the process of being transported back to the facility from a medical appointment.
The fact that he was being held in this facility pursuant to an OJS detainer, as opposed to a court order, is of no significance. We have noted that adult criminal offenders who are in custody "pursuant to commitment by official proceedings" fall within the definitional scope of § 28-912(1).[7] Matthew's detention at LCYSC was likewise pursuant to official proceedings. A juvenile court retains jurisdiction "over any juvenile committed to [OJS] until such time that the juvenile is discharged from [OJS]."[8] At the time of commitment, the court is required to determine the initial level of treatment.[9] In this case, the court ordered initial treatment at a group home level. If OJS proposes to transfer a juvenile to a higher level of care, it must seek court approval, which can be given only after OJS establishes at a hearing that the change is in the best interests of the juvenile, with due consideration for public safety.[10] OJS can make an immediate temporary change without prior court approval under limited circumstances, including when a facility of placement which is not state owned has asked that the juvenile be removed.[11] That is what occurred in this case.
Matthew argues on appeal that because he was committed to OJS, his running away from the transport officer was simply "absconding" from an OJS commitment and was not an escape from official detention.[12] He alleges that his actions thus do not fall under § 28-912, but instead fall under Neb.Rev.Stat. § 43-410 (Reissue 2004), which provides in part:
Any peace officer, juvenile parole officer, or direct care staff member of [OJS] has the authority to apprehend and detain a juvenile who has absconded or is attempting to abscond from a placement *578 for evaluation or commitment to [OJS] and shall cause the juvenile to be returned to the facility or program or an appropriate juvenile detention facility.
He contends that if absconding from an OJS placement constituted an escape within the meaning of § 28-912, the provisions of § 43-410 would be unnecessary and redundant.
We are not persuaded by this argument. The placement or commitment of a juvenile to the custody of OJS does not necessarily result in official detention within the meaning of § 28-912(1). Juveniles adjudicated as delinquent may be placed with OJS for evaluation to aid the court in disposition.[13] When committing an adjudicated juvenile to the custody of OJS, a court must order the "initial level of treatment."[14] Section 43-408(5) provides that "[i]f a juvenile is placed in detention after the initial level of treatment is determined by the committing court," the court is required to hold periodic status hearings. The same statute specifically provides that "[p]lacement of a juvenile in detention shall not be considered as a treatment service.[15] Thus, it is possible for a juvenile to abscond from an OJS placement or commitment without committing the offense of escape from official detention.
In this case, however, the facts clearly establish that Matthew was being held in detention pursuant to official proceedings when he fled from the transportation employee. Accordingly, the juvenile court did not err in adjudicating Matthew pursuant to § 43-247(2) as a child who has committed an act which would constitute a felony under the laws of this state. Finding no error, we affirm the judgment of the separate juvenile court.
AFFIRMED.
NOTES
[1] Neb.Rev.Stat. § 43-411 (Reissue 2004).
[2] See Neb.Rev.Stat. § 24-1106(3) (Reissue 1995).
[3] Jones v. Shelter Mut. Ins. Cos., 274 Neb. 186, 738 N.W.2d 840 (2007); Burns v. Nielsen, 273 Neb. 724, 732 N.W.2d 640 (2007).
[4] Neb.Rev.Stat. § 43-403(5) (Reissue 2004).
[5] In re Estate of Nemetz, 273 Neb. 918, 735 N.W.2d 363 (2007); Ottaco Acceptance, Inc. v. Larkin, 273 Neb. 765, 733 N.W.2d 539 (2007).
[6] See Neb.Rev.Stat. § 43-404 (Reissue 2004).
[7] State v. Farr, 209 Neb. 163, 169, 306 N.W.2d 854, 858 (1981).
[8] Neb.Rev.Stat. § 43-408(2) (Cum.Supp. 2006).
[9] Id.
[10] § 43-408(4)(a).
[11] § 43-408(4)(b).
[12] Brief for appellant at 14.
[13] Neb.Rev.Stat. §§ 43-281 and 43-413 (Reissue 2004).
[14] § 43-408(2).
[15] § 43-408(5).