in fact, its order specifically noted that these convictions were unrelated. Hess' argument is without merit.

[8] Even assuming that the district court erred in referencing exhibit 3, such was not reversible error. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[20] A review of the order demonstrates that the district court did not consider these convictions in reference to the question presented—whether Hess had made the necessary showing under § 29-4603 to obtain relief under the Act. Instead, the district court's dismissal of Hess' petition was based upon Hess' failure to show by clear and convincing evidence that he was innocent of second degree murder.

Hess' fourth assignment of error is without merit.

## CONCLUSION

The decision of the district court is affirmed.

Affirmed.

---

[20] *Simon v. Drake*, 285 Neb. 784, 829 N.W.2d 686 (2013).

---

In re Interest of Marcella G., a child
under 18 years of age.
State of Nebraska, Department of Health and Human
Services, appellant, v. Marcella G., appellee.
___ N.W.2d ___

Filed February 28, 2014.    No. S-13-644.

1.  **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2.  **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
3.  ____: ____. Absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning.
4.  **Statutes.** A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

5. **Juvenile Courts.** For purposes of Neb. Rev. Stat. § 43-247.02 (Supp. 2013), the date a juvenile is committed to the Office of Juvenile Services for treatment is controlling, not the date of a subsequent transfer to a youth rehabilitation and treatment center.

6. ____. At the time of a commitment to the Office of Juvenile Services, the juvenile court is required to determine the initial level of treatment.

7. ____. If after commitment the Office of Juvenile Services later desires to transfer a juvenile to a higher level of care, it must seek court approval.

8. **Statutes.** Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme, giving effect to every provision.

9. **Statutes: Appeal and Error.** When possible, an appellate court will try to avoid a statutory construction that would lead to an absurd result.

10. **Juvenile Courts: Words and Phrases.** For purposes of the Health and Human Services, Office of Juvenile Services Act, the term "committed" means an order by a court committing a juvenile to the care and custody of the Office of Juvenile Services for treatment.

Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Jon Bruning, Attorney General, and C.J. Roberts, Special Assistant Attorney General, for appellant.

Dennis R. Keefe, Lancaster County Public Defender, and Margene M. Timm for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CASSEL, J.

## INTRODUCTION

In 2013, the Legislature transferred treatment supervision in most cases involving juvenile law violations from the Office of Juvenile Services (OJS) to probation. A complex statute[1] allocated transitional responsibilities, including those regarding a youth rehabilitation and treatment center (YRTC). In this appeal, a juvenile was committed to OJS for community-based services before July 1, 2013, but after that date, OJS sought to transfer the juvenile to a YRTC. We must decide whether the juvenile court erred in making the transfer without doing so as

---

[1] Neb. Rev. Stat. § 43-247.02 (Supp. 2013).

a condition of intensive supervised probation (ISP). Because the plain language of the statute[2] allocated this transitional responsibility to OJS, we affirm.

## BACKGROUND

On March 1, 2013, the separate juvenile court of Lancaster County adjudicated Marcella G. for a misdemeanor law violation.[3] Following a dispositional hearing, the juvenile court committed Marcella to OJS, an agency of the Nebraska Department of Health and Human Services (DHHS),[4] for treatment at the out-of-home level of care. The commitment order was entered on March 12.

On July 5, 2013, DHHS filed a motion seeking an order approving a higher level of care, from a group-home level of care to the YRTC level of care, as a condition of ISP. The juvenile court sustained the motion for higher level of care and approved the transfer of Marcella to a YRTC. However, the court overruled "[t]hat portion of the motion requesting alternative disposition in the form of [ISP]." The transfer order was entered on July 8.

DHHS timely appealed, and we moved the case to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[5]

## ASSIGNMENT OF ERROR

DHHS assigns that the juvenile court erred by placing Marcella at the YRTC without making the placement a condition of ISP.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[6]

---

[2] § 43-247.02(3).

[3] See Neb. Rev. Stat. § 43-247(1) (Reissue 2008).

[4] See Neb. Rev. Stat. § 43-404 (Reissue 2008).

[5] Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[6] *In re Interest of Kodi L.*, 287 Neb. 35, 840 N.W.2d 538 (2013).

[2] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[7]

## ANALYSIS

Although we decide this case based upon the plain language of the statute, an understanding of OJS' function prior to the enactment of L.B. 561[8] would be helpful. OJS had oversight and control of state juvenile correctional facilities and programs other than the secure youth confinement facility.[9] OJS was charged with adopting and promulgating "rules and regulations for the levels of treatment and for management, control, screening, evaluation, treatment, rehabilitation, parole, transfer, and discharge of juveniles placed with or committed to [OJS]."[10] OJS handled evaluations of juveniles[11] and had administrative authority over the parole function for juveniles committed to a YRTC.[12] Every juvenile committed to OJS under the Nebraska Juvenile Code or for certain criminal offenses prosecuted in adult court[13] remained committed until attaining age 19 or being legally discharged.[14]

L.B. 561 changed OJS' role with respect to juvenile law violators. Through L.B. 561, the Legislature intended that the Nebraska Juvenile Service Delivery Project—which was established in 2012 as a pilot program administered by the Office of Probation Administration[15]—be expanded statewide in a three-step, phase-in process beginning July 1, 2013, with full implementation by July 1, 2014.[16] Among other things, the pilot

---

[7] *In re Interest of Violet T.*, 286 Neb. 949, 840 N.W.2d 459 (2013).

[8] 2013 Neb. Laws, L.B. 561.

[9] § 43-404.

[10] Neb. Rev. Stat. § 43-405(4) (Cum. Supp. 2012).

[11] See Neb. Rev. Stat. §§ 43-413 and 43-414 (Reissue 2008) and 43-415 (Cum. Supp. 2012).

[12] Neb. Rev. Stat. § 43-416 (Cum. Supp. 2012).

[13] See Neb. Rev. Stat. § 29-2204(3) (Cum. Supp. 2012).

[14] Neb. Rev. Stat. § 43-412(1) (Cum. Supp. 2012).

[15] See Neb. Rev. Stat. § 43-4101 (Cum. Supp. 2012).

[16] Neb. Rev. Stat. § 43-4102(1) (Supp. 2013).

program sought to prevent the unnecessary commitment of juveniles to OJS, to provide access to services in the community for juveniles placed on probation, and to prevent juveniles from needlessly becoming further entrenched in the juvenile justice system.[17] As a result of the Nebraska Juvenile Service Delivery Project, the Office of Probation Administration will take over the duties of OJS with respect to community supervision and parole of juvenile law violators and of evaluations for such juveniles.[18] The role of OJS will be limited to operating YRTC's and taking care and custody of juveniles placed at YRTC's.[19] With that understanding in place, we turn to the issue on appeal.

The question presented is whether under L.B. 561, a juvenile court can transfer a juvenile who was adjudicated and committed to OJS' custody for treatment prior to July 1, 2013, to a YRTC after July 1 without making the commitment part of an order of ISP in accordance with § 43-247.02(2) and Neb. Rev. Stat. § 43-286(1)(b)(ii) (Supp. 2013). DHHS and Marcella rely upon different subsections of § 43-247.02, which became effective on May 30, 2013. Neither party focuses upon subsection (1), which prohibits certain acts by a juvenile court on and after October 1. We agree that subsection (1) is not implicated in this appeal, because the juvenile court's order was entered prior to that date.

DHHS relies upon subsection (2), and Marcella relies upon subsection (3). These subsections of § 43-247.02 provide:

> (2) Notwithstanding any other provision of Nebraska law, on and after July 1, 2013, a juvenile court shall not commit a juvenile to [OJS] for placement at a [YRTC] except as part of an order of [ISP] under subdivision (1)(b)(ii) of section 43-286.
>
> (3) Nothing in this section shall be construed to limit the authority or duties of [DHHS] in relation to juveniles adjudicated under subdivision (1), (2), (3)(b), or (4) of

---

[17] § 43-4101(1) (Supp. 2013).

[18] § 43-4102(1).

[19] *Id*.

section 43-247 who were committed to the care and cus-
tody of [DHHS] prior to October 1, 2013, to [OJS] for
community-based services prior to October 1, 2013, or to
[OJS] for placement at a [YRTC] prior to July 1, 2013.
The care and custody of such juveniles with [DHHS] or
[OJS] shall continue in accordance with the Nebraska
Juvenile Code and the Juvenile Services Act as such acts
existed on January 1, 2013, until:

    (a) The juvenile reaches the age of majority;

    (b) The juvenile is no longer under the care and cus-
tody of the department pursuant to a court order or for
any other reason, a guardian other than the department is
appointed for the juvenile, or the juvenile is adopted;

    (c) The juvenile is discharged pursuant to section
43-412, as such section existed on January 1, 2013; or

    (d) A juvenile court terminates its jurisdiction of the
juvenile.

DHHS argues that subsection (2) controls and that, thus, any
placement at a YRTC may be made only as part of an order
of ISP. Marcella, on the other hand, asserts that subsection (2)
has no application, because she was committed to OJS prior to
July 1, 2013. Marcella contends that subsection (3) is operative
and that, thus, the juvenile court properly followed the law that
existed on January 1 for a juvenile committed to OJS. DHHS
counters that subsection (3) refers to the authority and duties
of OJS—not to the court's authority, which it claims is found
in subsection (2).

    [3,4] Our analysis is driven by the plain language of the
entire section,[20] including both subsections (2) and (3). Absent
anything to the contrary, an appellate court will give statutory
language its plain and ordinary meaning.[21] Under the plain
language of subsection (3), nothing in "this section"—which
means all of § 43-247.02 and obviously includes subsection
(2)—limits DHHS' authority or duties in relation to juveniles,

---

[20] § 43-247.02.

[21] *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173
(2012).

such as Marcella, who were adjudicated under § 43-247(1) and were committed to the custody of OJS for community-based services prior to October 1, 2013. Section 43-247.02(3) provides that the care and custody of such juveniles shall continue as the Nebraska Juvenile Code and the Juvenile Services Act existed on January 1. And on January 1, those acts did not include a provision for ISP if a juvenile is placed at a YRTC. Further, a court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[22] Accepting DHHS' interpretation would render § 43-247.02(3) meaningless.

[5,6] For purposes of L.B. 561, the date a juvenile is committed to OJS for treatment is controlling, not the date of a subsequent transfer to a YRTC. At the time of commitment to OJS, the juvenile court is required to determine the initial level of treatment.[23] Here, the court committed Marcella to OJS' custody in March 2013 and ordered initial treatment at the out-of-home level of care. OJS was then charged with selecting a specific placement for Marcella within the level of treatment selected by the court.[24]

[7] If after commitment OJS later desires to transfer a juvenile to a higher level of care, it must seek court approval.[25] That is what happened in this case. In the juvenile court's initial dispositional order, it committed Marcella to OJS for treatment at a level less restrictive than a YRTC. Later, OJS requested the committing court to approve a transfer to a YRTC—a more restrictive level. OJS was authorized to regulate the transfer of juveniles committed to it until October 1, 2013.[26]

---

[22] *Id.*

[23] See, *In re Interest of Matthew P.*, 275 Neb. 189, 745 N.W.2d 574 (2008); Neb. Rev. Stat. § 43-408(1)(b) (Supp. 2013) (previously codified at § 43-408(2) (Reissue 2008)).

[24] See § 43-408(1)(b) and (c) (Supp. 2013) (previously codified at § 43-408(2) and (3) (Reissue 2008)).

[25] See *In re Interest of Matthew P., supra* note 23.

[26] § 43-405(4) (Supp. 2013).

Had the juvenile court initially determined that a YRTC was the appropriate level of treatment, then the provisions of § 43-286—which falls under the statutory section of the Nebraska Juvenile Code addressing disposition—would have been implicated. We recognized this in a case predating L.B. 561, when we stated, "The juvenile code authorizes a court to approve a transfer to a YRTC for juveniles already placed in OJS' custody or to commit a juvenile age 12 or older to a YRTC in a disposition order."[27] We reject DHHS' argument that the date when a juvenile is placed at a YRTC—via a transfer rather than an initial commitment—is dispositive.

[8,9] Our conclusion is bolstered by the plain language of two other statutes pertaining to juveniles committed to OJS. Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme, giving effect to every provision.[28] When possible, an appellate court will try to avoid a statutory construction that would lead to an absurd result.[29]

First, the language of § 43-286 supports our determination that the date of commitment to OJS is controlling. Section 43-286(1) governs a juvenile court's disposition of a juvenile when the court adjudicated the juvenile under § 43-247(1), (2), or (4).[30] Section 43-286(1)(b)(i) specifically applies to "all juveniles committed to [OJS] prior to July 1, 2013," and states that "[t]he court may commit such juvenile to [OJS]," but that the court shall not place a juvenile under 14 years of age at a YRTC unless certain conditions are met. Immediately following that subdivision is § 43-286(1)(b)(ii), which "applies to all juveniles committed to [OJS] for placement at a [YRTC] on or after July 1, 2013." Section 43-286(1)(b)(ii) provides in part:

> [T]he court may commit such juvenile to [OJS] for placement at a [YRTC] as a condition of an order of [ISP] if

---

[27] *In re Interest of Trey H.*, 281 Neb. 760, 765, 798 N.W.2d 607, 612 (2011).

[28] *Maycock v. Hoody*, 281 Neb. 767, 799 N.W.2d 322 (2011).

[29] *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013).

[30] *In re Interest of Edward B.*, 285 Neb. 556, 827 N.W.2d 805 (2013).

all levels of probation supervision and options for com-
munity-based services have been exhausted and place-
ment of such juvenile is a matter of immediate and urgent
necessity for the protection of such juvenile or the person
or property of another or if it appears that such juvenile is
likely to flee the jurisdiction of the court.

If we were to accept DHHS' interpretation, Marcella would
fit under both § 43-286(b)(i) and (ii), because she was com-
mitted to OJS prior to July 1, 2013, and, as DHHS urges, was
"committed" to OJS for placement at a YRTC after July 1. But
because these subdivisions have different consequences regard-
ing placement at a YRTC, they were intended to be mutually
exclusive. Because Marcella was clearly committed to OJS at
a level less restrictive than a YRTC prior to July 1, she could
not also be "committed" to OJS for placement at a YRTC on
or after July 1.

[10] Second, and for similar reasons, the plain language
of § 43-408 (Supp. 2013) supports our conclusion and dem-
onstrates that its subsections were intended to be mutually
exclusive. Section 43-408 falls within the Health and Human
Services, Office of Juvenile Services Act, and, for purposes of
that act, "[c]ommitted means an order by a court committing
a juvenile to the care and custody of [OJS] for treatment."[31]
And because § 43-408 refers to both a "juvenile committed"
by a committing court and a "transfer" of a juvenile by the
"court which committed the juvenile," a commitment must dif-
fer from a transfer. Here, the court committed Marcella to OJS'
custody for treatment in its March 2013 dispositional order.
Section 43-408(1) applies to all juveniles committed to OJS
for placement at a YRTC prior to July 1 and to all juveniles
committed to OJS for community supervision prior to October
1. Marcella fits under the latter provision. Section 43-408(1)(b)
then states, among other things, that the committing court shall
order the initial level of treatment for a juvenile committed
to OJS, that the committing court shall not order a specific
placement for a juvenile, and that the court shall continue to

---

[31] Neb. Rev. Stat. § 43-403(2) (Reissue 2008).

maintain jurisdiction over any juvenile committed to OJS until discharged from OJS.

Section 43-408(2), on the other hand, applies to all juveniles "committed" to OJS for placement at a YRTC on or after July 1, 2013. The order approving Marcella's transfer to the YRTC does not fall within the definition of "committed,"[32] because she had already been committed to the custody of OJS and, consequently, the order did not state that the court was committing her to the custody of OJS for treatment. And under § 43-408(2)(b), a committing court's only option is to "order placement at a [YRTC] for a juvenile committed to [OJS]." Such court "shall continue to maintain jurisdiction over any juvenile committed to [OJS] for the purpose of reviewing the juvenile's probation upon discharge from the care and custody of [OJS]."[33] Thus, under § 43-408(1)(b), the court's jurisdiction over a juvenile committed to OJS ends upon discharge from OJS, whereas under § 43-408(2)(b), the court continues to maintain jurisdiction over a juvenile upon discharge from OJS for the purpose of reviewing the juvenile's probation. Because the court's continued jurisdiction over juveniles committed to OJS differs under the two subsections, they were clearly intended to be mutually exclusive. And because Marcella was committed to OJS for community supervision prior to October 1 under § 43-408(1), she could not also be committed to OJS for placement at a YRTC on or after July 1 under § 43-408(2). We conclude that Marcella was committed to OJS in March and was never "committed" for placement at a YRTC, but, rather, was placed there following a transfer.

## CONCLUSION

The disposition of this appeal is driven by transitional statutory provisions, which soon will no longer apply except to a very small number of offenders committed before July 1, 2013, and remaining under OJS' supervision. Thus, while there may be others affected by this decision, it will not have lasting

---

[32] See *id*.

[33] § 43-408(2)(b).

consequences. Under § 43-247.02(2), on and after July 1, 2013, a juvenile court can commit a juvenile to OJS for placement at a YRTC only as part of an order of ISP. But because Marcella had already been committed to OJS for placement at a level less restrictive than a YRTC and only later transferred to a YRTC after July 1, subsection (2) does not apply. We conclude that § 43-247.02(3) controls and that the juvenile court acted within its authority when it transferred Marcella to the YRTC without making the placement as part of an order of ISP.

AFFIRMED.

---

IN RE INTEREST OF QUINCY J., A CHILD
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, DEPARTMENT OF HEALTH AND HUMAN
SERVICES, APPELLANT, V. QUINCY J., APPELLEE.
___ N.W.2d ___

Filed February 28, 2014.    No. S-13-664.

Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge. Affirmed.

Jon Bruning, Attorney General, and C.J. Roberts, Special Assistant Attorney General, for appellant.

Toni Leija-Wilson for appellee.

S.A. Mora James, guardian ad litem.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CASSEL, J.

This case raises the same issue as that presented in *In re Interest of Marcella G.*,[1] decided today. The juvenile court committed Quincy J. to the custody of the Office of Juvenile Services for treatment at a level less restrictive than a youth

---

[1] *In re Interest of Marcella G., ante* p. 566, ___ N.W.2d ___ (2014).